ARROWOOD, Judge.
 

 *695
 
 Defendants Ronald Bell, M.D. ("Dr. Bell"), and Phillip Stover, M.D. ("Dr. Stover"), appeal the denial of their motions to dismiss based on grounds of public official immunity. For the following reasons, we affirm.
 

 I.
 
 Background
 

 Martin Leonard ("plaintiff") initiated this case against defendants in their individual capacities with the filing of summonses and a complaint on 5 May 2016. In the complaint, plaintiff asserts negligence claims against Dr. Bell and Dr. Stover, both physicians employed by the Department of Public Safety ("DPS"), albeit in different capacities. Those claims are based on allegations that Dr. Bell and Dr. Stover failed to meet the requisite standard of care for physicians while treating plaintiff, who at all relevant times was incarcerated in the Division of Adult Correction (the "DAC").
 

 Specifically, plaintiff alleges that he began experiencing severe back pain in late October 2012 and submitted the first of many requests for medical care. Over the next ten months, plaintiff was repeatedly evaluated in the DAC system by nurses, physician assistants, and Dr. Bell in response to plaintiff's complaints of increasing back pain and other attendant symptoms. Dr. Bell personally evaluated plaintiff nine times and, at the time of the seventh evaluation in June 2013, submitted a request for an MRI to the Utilization Review Board (the "Review Board"). Dr. Stover, a member of the Review Board, denied Dr. Bell's request for an MRI and instead recommended four weeks of physical therapy. Plaintiff continued to submit requests for medical care as his
 
 *696
 
 condition worsened. Upon further evaluations by a nurse and a physician assistant in August 2013, the physician assistant sent plaintiff to Columbus Regional Health Emergency Department for treatment. Physicians at Columbus Regional performed an x-ray and an MRI. Those tests revealed plaintiff was suffering from an erosion of bone in the L4 and L3 vertebra and a spinal infection. Plaintiff asserts Dr. Bell's failure to adequately evaluate and treat his condition, and Dr. Stover's refusal of requested treatment, amounts to medical malpractice.
 

 In response to the complaint, Dr. Bell filed a motion to dismiss pursuant to Rule 12(b)(6) on 13 July 2016. Among the grounds asserted for dismissal, Dr. Bell claimed he was entitled to "public official immunity for all acts and omissions alleged against him[.]" Likewise, on 19 July 2016, Dr. Stover filed a motion to dismiss pursuant to Rule 12(b)(1), (2), and (6). Defendants' motions were heard during the 3 October 2016 session of Cumberland County Superior Court before the Honorable Tanya T. Wallace. On 25 October 2016, the court denied defendants' motions to dismiss.
 

 Dr. Stover filed notice of appeal from the 25 October 2016 order on 18 November 2016. Dr. Bell filed notice of appeal from the 25 October 2016 order on 21 November 2016.
 

 II.
 
 Discussion
 

 On appeal, both Dr. Bell and Dr. Stover contend the trial court erred in denying their motions to dismiss. Specifically, Dr. Bell argues the trial court erred in denying his Rule 12(b)(6) motion for failure to state a claim because he is entitled to public official immunity. Dr. Stover similarly argues the trial court erred in denying his Rule 12(b)(2) and (6) motions for lack of personal jurisdiction and failure to state a claim because he is entitled to public official immunity.
 

 A.
 
 Interlocutory Nature of Appeals
 

 At the outset, we note that defendants' appeals are interlocutory because the trial court's denial of their motions to dismiss did not dispose of the case.
 
 See
 

 Veazey v. City of Durham
 
 ,
 
 231 N.C. 357
 
 , 362,
 
 57 S.E.2d 377
 
 , 381 (1950) ("An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in
 
 *448
 
 order to settle and determine the entire controversy."). "Generally, there is no right of immediate appeal from interlocutory orders and judgments."
 
 Goldston v. Am. Motors Corp.
 
 ,
 
 326 N.C. 723
 
 , 725,
 
 392 S.E.2d 735
 
 , 736 (1990). Immediate appeal is available, however, from an interlocutory order that affects a
 
 *697
 
 substantial right.
 
 N.C. Gen. Stat. §§ 1-277
 
 (a) (2015) and 7A-27(b)(3)(a) (2015). "Orders denying dispositive motions based on public official's immunity affect a substantial right and are immediately appealable."
 
 Summey v. Barker
 
 ,
 
 142 N.C. App. 688
 
 , 689,
 
 544 S.E.2d 262
 
 , 264 (2001) ;
 
 see also
 

 Can Am South, LLC v. State
 
 ,
 
 234 N.C. App. 119
 
 , 122,
 
 759 S.E.2d 304
 
 , 307 (acknowledging the longstanding rule that the denial of a motion to dismiss based on immunity pursuant to Rule 12(b)(6) affects a substantial right and is immediately appealable under
 
 N.C. Gen. Stat. § 1-277
 
 (a) ),
 
 disc. review denied
 
 ,
 
 367 N.C. 791
 
 ,
 
 766 S.E.2d 624
 
 (2014). "A substantial right is affected because '[a] valid claim of immunity is more than a defense in a lawsuit; it is in essence immunity from suit. Were the case to be erroneously permitted to proceed to trial, immunity would be effectively lost.' "
 
 Farrell v. Transylvania Cnty. Bd. of Educ.
 
 ,
 
 175 N.C. App. 689
 
 , 694,
 
 625 S.E.2d 128
 
 , 133 (2006) (quoting
 
 Slade v. Vernon
 
 ,
 
 110 N.C. App. 422
 
 , 425,
 
 429 S.E.2d 744
 
 , 746 (1993),
 
 implied overruling based on other grounds
 
 ,
 
 Boyd v. Robeson County
 
 ,
 
 169 N.C. App. 460
 
 ,
 
 621 S.E.2d 1
 
 (2005) ). Consequently, we address defendants' interlocutory appeals from the denials of their Rule 12(b)(6) motions to dismiss.
 

 Immediate appeal is also available from an adverse ruling as to personal jurisdiction.
 
 N.C. Gen. Stat. § 1-277
 
 (b). This Court has consistently held that immunity presents a question of personal jurisdiction and, therefore, denial of a Rule 12(b)(2) motion premised on immunity is immediately appealable under
 
 N.C. Gen. Stat. § 1-277
 
 (b).
 
 Can Am South
 
 ,
 
 234 N.C. App. at 124
 
 ,
 
 759 S.E.2d at 308
 
 . Thus, review of Dr. Stover's interlocutory appeal is proper on this additional ground.
 

 B.
 
 Standard of Review
 

 The standard of review for an appeal from a denial of a Rule 12(b)(6) motion is well settled.
 

 The motion to dismiss under [Rule] 12(b)(6) tests the legal sufficiency of the complaint. In ruling on the motion the allegations of the complaint must be viewed as admitted, and on that basis the court must determine as a matter of law whether the allegations state a claim for which relief may be granted.
 

 Stanback v. Stanback
 
 ,
 
 297 N.C. 181
 
 , 185,
 
 254 S.E.2d 611
 
 , 615 (1979) (citations omitted). "This Court must conduct a
 
 de novo
 
 review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct."
 
 Leary v. N.C. Forest Prods., Inc.
 
 ,
 
 157 N.C. App. 396
 
 , 400,
 
 580 S.E.2d 1
 
 , 4,
 
 aff'd per curiam
 
 ,
 
 357 N.C. 567
 
 ,
 
 597 S.E.2d 673
 
 (2003).
 

 *698
 
 When this Court reviews the denial of a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "[w]e must review the record to determine whether there is evidence to support the trial court's determination that exercising its jurisdiction would be appropriate."
 
 Martinez v. Univ. of North Carolina
 
 ,
 
 223 N.C. App. 428
 
 , 430-31,
 
 741 S.E.2d 330
 
 , 332 (2012).
 

 C.
 
 Public Official Immunity
 

 Each defendant contends the trial court erred in denying his motion to dismiss because each defendant is entitled to public official immunity. "Public official immunity precludes suits against public officials in their individual capacities and protects them from liability '[a]s long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption[.]' "
 
 Fullwood v. Barnes
 
 , --- N.C. App. ----, ----,
 
 792 S.E.2d 545
 
 , 550 (2016) (quoting
 
 Smith v. State
 
 ,
 
 289 N.C. 303
 
 , 331,
 
 222 S.E.2d 412
 
 , 430 (1976) (citation omitted)). Our Supreme Court has explained that "[p]ublic officials receive immunity because it would be difficult to find those who would accept public office or engage in the administration of public affairs if they were to be personally liable for acts or omissions involved in exercising their discretion."
 

 *449
 

 Isenhour v. Hutto
 
 ,
 
 350 N.C. 601
 
 , 610,
 
 517 S.E.2d 121
 
 , 127 (1999) (citations and quotation marks omitted).
 

 In the present case, all parties agree that there were no allegations that defendants acted outside the scope of their authority or that defendants acted with malice or corruption. The sole question on appeal is whether defendants qualify as public officials entitled to immunity from suit in their individual capacities.
 

 "Under the doctrine of public official immunity, '[w]hen a governmental worker is sued individually, or in his or her personal capacity, our courts distinguish between public employees and public officials in determining negligence liability.' "
 
 Farrell
 
 ,
 
 175 N.C. App. at 695
 
 ,
 
 625 S.E.2d at 133
 
 (quoting
 
 Hare v. Butler
 
 ,
 
 99 N.C. App. 693
 
 , 699-700,
 
 394 S.E.2d 231
 
 , 236 (1990) (citations omitted)).
 

 It is settled in this jurisdiction that a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto. An employee, on the other hand, is personally liable for negligence in the performance of his or her duties proximately causing an injury.
 

 *699
 

 Isenhour
 
 ,
 
 350 N.C. at 609-10
 
 ,
 
 517 S.E.2d at 127
 
 (citations and quotation marks omitted).
 

 In distinguishing between a public official and a public employee, our courts have held that (1) a public office is a position created by the constitution or statutes; (2) a public official exercises a portion of the sovereign power; and (3) a public official exercises discretion, while public employees perform ministerial duties. Additionally, an officer is generally required to take an oath of office while an agent or employee is not required to do so.
 

 Fraley v. Griffin
 
 ,
 
 217 N.C. App. 624
 
 , 627,
 
 720 S.E.2d 694
 
 , 696 (2011) (
 
 Murray v. Cnty. of Person
 
 ,
 
 191 N.C. App. 575
 
 , 579-80,
 
 664 S.E.2d 58
 
 , 61 (2008) (internal quotations and citations omitted));
 
 see also
 

 Isenhour
 
 ,
 
 350 N.C. at 610
 
 ,
 
 517 S.E.2d at 127
 
 (recognizing the same "basic distinctions between a public official and a public employee").
 

 Defendants each maintain that they have been delegated and carry out the DAC's constitutional and statutory duty to provide health services to inmates. They further maintain that they exercise a portion of the sovereign power and substantial discretion in fulfilling that duty. Thus, defendants argue that they are public officials and not public employees. We disagree.
 

 Defendants fail to point to any constitutional or statutory provisions creating their respective positions; and we have found no such authority. Instead, defendants contend they satisfy the first prong in the public official analysis because they have been delegated the DAC's duty to provide health services to inmates.
 

 This Court has stated that "[a] position is considered 'created by statute' when 'the officer's position ha[s] a clear statutory basis
 
 or the officer ha[s] been delegated a statutory duty by a person or organization created by statute
 
 ' or the Constitution."
 
 Baker v. Smith
 
 ,
 
 224 N.C. App. 423
 
 , 428,
 
 737 S.E.2d 144
 
 , 148 (2012) (emphasis in original) (quoting
 
 Fraley
 
 ,
 
 217 N.C. App. at 627
 
 ,
 
 720 S.E.2d at 696
 
 (citation and quotation marks omitted)). Thus, in
 
 Baker
 
 , this Court concluded that the position of assistant jailer was "created by statute" for purposes of public official immunity even though there was not an explicit statutory basis for the position.
 
 Id
 
 . at 428-30,
 
 737 S.E.2d at 148-49
 
 . The Court reasoned that,
 

 N.C. Gen. Stat. § 162-22
 
 establishes that sheriffs have the duty to operate the jail and the power to "appoint[ ] the keeper thereof."
 
 N.C. Gen. Stat. § 162-22
 
 (2011)....
 

 *700
 
 Regardless of whether we read § 162-22 to include assistant jailers, that statute establishes the duty of the sheriff to operate the jail.
 
 N.C. Gen. Stat. § 162-24
 
 permits a sheriff to "appoint a deputy
 
 or employ others to assist him in performing his official duties
 
 ."
 
 N.C. Gen. Stat. § 162-24
 
 (2011) (emphasis added). Read together with § 162-22, it is clear that the legislature intended to permit the sheriff to "employ others"-plural-to help perform his official duties, including his duty to take
 
 *450
 
 "care and custody of the jail."
 
 N.C. Gen. Stat. § 162-22
 
 .
 

 That statutory duty defines the role of an assistant jailer. Assistant jailers are "charged with the care, custody, and maintenance of prisoners."
 
 State v. Shepherd
 
 ,
 
 156 N.C. App. 603
 
 , 607,
 
 577 S.E.2d 341
 
 , 344 (2003). The same article that vests the sheriff and chief jailer with their powers also vests them with the authority to appoint subordinates, such as assistant jailers.
 
 See
 

 N.C. Gen. Stat. § 162-24
 
 . Our legislature, in a different article, described detention officers, i.e. jailers, as "[a] person, who through the special trust and confidence of the sheriff, has been appointed as a detention officer by the sheriff." N.C. Gen. Stat. § 17E-2 (2011). Indeed, the jail cannot operate without "custodial personnel" to "supervise" and "maintain safe custody and control" of the prisoners.
 
 N.C. Gen. Stat. § 153-224
 
 (a) (2011) ("No person may be confined in a local confinement facility unless custodial personnel are present and available to provide continuous supervision in order that custody will be secure ...")
 
 Thus, assistant jailers are delegated the statutory duty to take care of the jail and the detainees therein by the sheriff-a position created by our Constitution.
 
 N.C. Const. art. VII, § 2.
 

 Id
 
 . at 429-30,
 
 737 S.E.2d at 148-49
 
 (footnote omitted) (emphasis added). Other cases have similarly held that positions with no explicit statutory basis are nonetheless "created by statute" when there is statutory authorization for the delegation of a duty.
 
 See, e.g.,
 

 Cherry v. Harris
 
 ,
 
 110 N.C. App. 478
 
 , 480-81,
 
 429 S.E.2d 771
 
 , 772-73 (1993) (a forensic pathologist who conducted an autopsy and prepared reports in response to an official request by a county medical examiner satisfied the first element of the public official analysis because the medical examiner, a position created by statute, had the statutory authority pursuant to N.C. Gen. Stat. § 130A-389(a) to order that an autopsy be performed by
 
 *701
 
 a competent pathologist designated by the Chief Medical Examiner, and the forensic pathologist had been so designated).
 

 Defendants rely on
 
 Baker
 
 and contend the result in the present case should be no different because the DAC is statutorily created and they have been delegated the DAC's constitutional and statutory duty to provide health services to inmates.
 

 Defendants correctly point out that the DAC is statutorily created. The relevant statute provides that "[t]here is hereby created and established a division to be known as the Division of Adult Correction of the Department of Public Safety with the organization, powers, and duties hereafter defined in the Executive Organization Act of 1973." N.C. Gen. Stat. § 143B-700 (2015). The immediately following statute adds that "[i]t shall be the duty of the [DAC] to provide the necessary custody, supervision, and treatment to control and rehabilitate criminal offenders...." N.C. Gen. Stat. § 143B-701 (2015). Defendants also correctly point out that the duties of the DAC include the duty to provide health services to inmates. Specifically, our general statutes provide that "[t]he general policies, rules and regulations of the [DAC] shall prescribe standards for health services to prisoners, which shall include preventive, diagnostic, and therapeutic measures on both an outpatient and a hospital basis, for all types of patients."
 
 N.C. Gen. Stat. § 148-19
 
 (a) (2015). The duty to provide health services to inmates also has a constitutional basis, as recognized in
 
 West v. Atkins
 
 ,
 
 487 U.S. 42
 
 , 54-55,
 
 108 S.Ct. 2250
 
 ,
 
 101 L.Ed.2d 40
 
 , 53 (1988) (explaining that "the State has a constitutional obligation, under the Eight Amendment, to provide adequate medical care to those whom it has incarcerated[ ]" because "[i]t is only those physicians authorized by the State to whom [an] inmate may turn[ ]"), and
 
 Medley v. N.C. Dep't of Correction
 
 ,
 
 330 N.C. 837
 
 , 842,
 
 412 S.E.2d 654
 
 , 658 (1992) (citing
 
 West
 
 while acknowledging that "[i]n addition to common-law and statutory duties to provide adequate medical care for inmates, the state also bears this responsibility under our state Constitution and the federal Constitution[ ]").
 

 West
 
 and
 
 Medley
 
 are only relevant in this case to establish that the DAC has a duty to provide health services to inmates. Otherwise, both cases hold that the State cannot escape liability by delegating that constitutional duty. In
 
 West
 
 , the Supreme Court
 
 *451
 
 explained that a physician who is under contract with the State to provide medical services to inmates acts "under color of state law" while providing those services for purposes of asserting an action under
 
 42 U.S.C. § 1983
 
 .
 
 West
 
 ,
 
 487 U.S. at 54
 
 ,
 
 108 S.Ct. 2250
 
 ,
 
 101 L.Ed.2d at 53
 
 . Thus, the physician's "conduct is fairly attributable to the State."
 
 Id
 
 . In
 
 Medley
 
 , the Court explained "that the duty to provide adequate medical care to inmates, imposed by the state and federal
 
 *702
 
 Constitutions, and recognized in state statute and caselaw, is such a fundamental and paramount obligation of the state that the state cannot absolve itself of responsibility by delegating it to another."
 
 Medley
 
 ,
 
 330 N.C. at 844
 
 ,
 
 412 S.E.2d at 659
 
 . Thus, the North Carolina Department of Correction could not avoid liability by contracting a physician to fulfill its duty because the physician "is as a matter of law an agent for purposes of applying the doctrine of
 
 respondeat superior
 
 ."
 
 Id
 
 . at 845,
 
 412 S.E.2d at 659
 
 . However, neither
 
 West
 
 nor
 
 Medley
 
 stands for the proposition that a physician fulfilling the DAC's duty to provide health services to inmates was immune from suit in their individual capacity. Any argument that defendants cannot be sued in their individual capacities based on the holdings of
 
 West
 
 or
 
 Medley
 
 is erroneous and misplaced.
 

 Based on the above, we agree with defendants that the DAC is statutorily created and that the DAC has a duty to provide health services to inmates. We, however, find the present case distinguishable from
 
 Baker
 
 and other cases that hold a position is created by statute when there has been a delegation of a statutory duty by a person or organization created by statute or the constitution. In each of those cases, the Court points directly to a statute that authorizes a constitutionally or statutorily created person or organization to delegate its statutory duty to another individual. In
 
 Baker
 
 , that statute was
 
 N.C. Gen. Stat. § 162-24
 
 , which "permits a sheriff to 'appoint a deputy or employ others to assist him in performing his official duties.' "
 
 224 N.C. App. at 429
 
 ,
 
 737 S.E.2d at 148
 
 (quoting
 
 N.C. Gen. Stat. § 162-24
 
 ) (emphasis omitted). In
 
 Cherry
 
 , that statute is N.C. Gen. Stat. § 130A-389(a), which allows a county medical examiner to order an autopsy to be performed by a pathologist. 110 N.C. App. at 481, 429 S.E.2d at 773. Even in
 
 Chastain v. Arndt
 
 , --- N.C. App. ----,
 
 800 S.E.2d 68
 
 (2017) (holding a Basic Law Enforcement Training ("BLET") firearms instructor was a public official entitled to immunity), a recent decision that both defendants cite in reply to plaintiff's arguments, this Court, in support of its finding that "[the defendant], in his role as a BLET firearms instructor, was delegated a statutory duty by a person or organization created by statute[,]" points to statutory authority that establishes the North Carolina Criminal Justice Education and Training Standards Commission (the "Commission") and shows that its duty to train officers is to be delegated to instructors.
 
 Id
 
 . at ----, 800 S.Ed.2d at 76. As this Court summarized in
 
 Chastain
 
 , those provisions involving instructors provide as follows:
 

 The Commission ... has the authority to "[e]stablish minimum standards for the certification of criminal justice training schools and programs or courses of instruction that
 
 *703
 
 are required by [Chapter 17C]," and "[e]stablish minimum standards and levels of education and experience for all criminal justice instructors[.]" N.C. Gen. Stat. § 17C-6(a)(4) and (a)(6). The Commission may "[c]ertify and recertify, suspend, revoke, or deny ... criminal justice instructors and school directors who participate in programs or courses of instruction that are required by [Chapter 17C]." N.C. Gen. Stat. § 17C-6 (7).
 

 Id
 
 .
 

 In the present case, defendants contend the DAC has delegated to them its duty to provide health services to inmates. Yet, defendants fail to point to any statutory provisions similar to those in
 
 Baker
 
 ,
 
 Cherry
 
 , or
 
 Chastain
 
 contemplating the delegation of the DAC's duty, or contemplating that the DAC will hire its own physicians. Instead, defendants cite the following portions of
 
 N.C. Gen. Stat. § 148-19
 
 :
 

 (a) ... The [DAC] shall seek the cooperation of public and private agencies, institutions, officials and individuals in the development of adequate health services to prisoners.
 

 ....
 

 *452
 
 (c) Each prisoner committed to the [DAC] shall receive a physical and mental examination by a health care professional authorized by the North Carolina Medical Board to perform such examinations as soon as practicable after admission and before being assigned to work....
 

 Neither of those portions of
 
 N.C. Gen. Stat. § 148-19
 
 , however, indicate that the legislature intended for DAC to hire its own physicians. The cited portion of subsection (a) is broad and shows only that the legislature left it to DAC to develop adequate health services; it does not provide any indication how health services would be provided. Subsection (c) is similarly broad, requiring an initial evaluation by an authorized health care professional, but no further indication as to how the DAC was to provide that health care professional. There are many ways the DAC could fulfill its duty to provide health services to inmates. In fact, subsection (b) contemplates that the Secretary of Public Safety may request personnel employed by the Department of Health and Human Services or other State agencies to be detailed to the DAC for purposes of providing health services.
 
 N.C. Gen. Stat. § 148-19
 
 (b). DPS's decision to employ its own physicians appears to be a policy decision.
 

 *704
 
 In deciding defendants are not public officials entitled to immunity, we find additional guidance in this Court's decision in
 
 Farrell v. Transylvania Cnty. Bd. of Educ.
 
 ,
 
 199 N.C. App. 173
 
 ,
 
 682 S.E.2d 224
 
 (2009). In
 
 Farrell
 
 , the Court addressed whether a special needs teacher in the public school system was entitled to public official immunity from claims related to the physical and emotional abuse of the plaintiffs' son.
 
 Id
 
 . at 174,
 
 682 S.E.2d at 226
 
 . In concluding that the teacher was not a public official, the Court distinguished the teacher's case from
 
 Kitchin v. Halifax Cnty.
 
 ,
 
 192 N.C. App. 559
 
 ,
 
 665 S.E.2d 760
 
 (2008),
 
 disc. rev. denied
 
 .,
 
 363 N.C. 127
 
 ,
 
 673 S.E.2d 135
 
 (2009) (holding that an animal control officer was a public official because the position is created by statute),
 
 Hobbs v. N.C. Dep't of Human Res.
 
 ,
 
 135 N.C. App. 412
 
 ,
 
 520 S.E.2d 595
 
 (1999) (holding that department of social services staff members who were acting for and representing the director of social services were public officials because the director, a public official, had the statutory authority to delegate to staff members authority to act as his representative), and
 
 Price v. Davis
 
 ,
 
 132 N.C. App. 556
 
 ,
 
 512 S.E.2d 783
 
 (1999) (without discussing the
 
 Isenhour
 
 criteria, holding that a correctional sergeant and an assistant superintendent at a correctional facility were public officials), stating that "the party being sued [in those cases] was either employed in a position created by statute, or delegated a statutory duty by a person or organization created by statute."
 
 Farrell
 
 ,
 
 199 N.C. App. at 179
 
 ,
 
 682 S.E.2d at 229
 
 . In contrast, the Court in
 
 Farrell
 
 noted that although N.C. Gen. Stat. § 115C-307 defines the duties of teachers and N.C. Gen. Stat. § 115C-325 governs the system of employment for public school teachers, neither of those statutes create the position of teacher.
 
 Id
 
 . at 177, 682 S.Ed.2d at 228. Thus, despite the explicit constitutional guarantee of the right to a free public education,
 
 see
 

 Leandro v. State
 
 ,
 
 346 N.C. 336
 
 ,
 
 488 S.E.2d 249
 
 (1997), the State's constitutional duty to guard and maintain that right,
 
 see
 
 N.C. Const. art. 1, § 15, and statutes providing for the hiring of teachers, defining the duties of teaches, and governing the system of employment for teaches,
 
 see
 
 N.C. Gen. Stat. §§ 115C-299, -307, and -325, teachers that are employed to fulfill the State's duty are not public officials entitled to immunity.
 

 Similarly, although defendants are employed by DPS to help fulfill the State's duty to provide health services to inmates, DPS's decision to employ its own physicians in the DAC does not mean that those physicians hold positions created by statute to be considered a public official. To hold otherwise would open the flood gates so that any physician providing health services to an inmate in the DAC, whether or not the physician was directly employed by DPS, or any DPS employees providing services relating to the care and wellbeing of inmates for that matter,
 
 *705
 
 even those providing the food services, would be considered to hold positions created by statute so as to satisfy the first prong of the public official analysis. We reject such an analysis that vastly expands the scope of public official immunity to those employees.
 
 *453
 
 Although Dr. Bell and Dr. Stover were both physicians employed by DPS to provide health services to inmates in the DAC, their positions were not created by statute. Therefore, like the teacher in
 
 Farrell
 
 , they are not public officials for purposes of public official immunity.
 

 Regarding the second and third prongs in the public official analysis, defendants contend that because they fulfill the DAC's duty to provide health services to inmates, their jobs necessarily involve the power of the sovereign and the exercise of discretion. Because we hold that defendants' positions are not created by statute, we need not address the remaining elements to reach the conclusion that defendants are not public officials entitled to immunity. We, however, take this opportunity to note that there is nothing uniquely sovereign about the health services provided by defendants to plaintiff in this case, except that plaintiff was an inmate in the DAC. Furthermore, all physicians exercise discretion in the evaluation and treatment of patients. The discretion exercised by defendants in providing health services to plaintiff in this case is no different than the discretion exercised by physicians treating patients outside of the DAC system.
 

 Finally, while not dispositive to our analysis, we note that neither of these defendants took an oath of office as is often required to be considered a public official.
 
 See
 

 Baker
 
 ,
 
 224 N.C. App. at 433
 
 ,
 
 737 S.E.2d at 151
 
 .
 

 III.
 
 Conclusion
 

 For the foregoing reasons, we affirm the trial court's decision to deny defendants' motions to dismiss based on assertions of public official immunity.
 

 AFFIRMED.
 

 Judges ELMORE and DIETZ concur.