COLLINS, Judge.
 

 *217
 
 Defendants Tayloria Lewis and Michael Ayodele appeal from an order denying their motions to dismiss Plaintiffs' complaint under North Carolina Rule of Civil Procedure 12 and on estoppel grounds. Defendants contend that the trial court erred by failing to conclude that (1) Defendants were shielded from suit by the doctrines of sovereign immunity and governmental immunity and (2) this lawsuit is an improper collateral attack on the decision of another trial court judge not to allow Defendants to be joined in a separate proceeding. We dismiss in part, affirm in part, and reverse in part.
 

 I. Background
 

 On 29 November 2017, Plaintiffs filed their complaint in Wake County Superior Court
 
 *529
 
 against Defendants, who both work for the Raleigh Housing Authority ("RHA"). In their complaint, Plaintiffs seek damages in connection with Defendants' alleged failure to transfer Plaintiffs to another apartment following various issues Plaintiffs allege to have experienced at their RHA-administered apartment, and bring causes of action for (1) intentional infliction of emotional distress, (2) negligent infliction of emotional distress, and (3) negligence, as well as a claim for (4) punitive damages.
 

 On 19 February 2018, Defendants filed motions to dismiss the complaint under N.C. Gen. Stat. § 1A-1, Rules 12(b)(1), 12(b)(2), and 12(b)(6) (2017), and on estoppel grounds, as well as an answer to the complaint. Defendants' motions were heard on 26 April 2018, and on 10 May 2018 the trial court denied Defendants' motions in full. Defendants timely appealed to this Court on 8 June 2018.
 

 *218
 

 II. Appellate Jurisdiction
 

 We first address whether this Court has jurisdiction to hear Defendants' appeal from the trial court's denials of their motions to dismiss.
 

 The trial court's denials of Defendants' motions to dismiss are interlocutory orders from which there is generally no right of immediate appeal.
 
 Goldston v. Am. Motors Corp.
 
 ,
 
 326 N.C. 723
 
 , 725,
 
 392 S.E.2d 735
 
 , 736 (1990). However, the North Carolina General Statutes set forth certain circumstances in which litigants like Defendants who are subject to an interlocutory order may immediately appeal, including when an interlocutory order "[a]ffects a substantial right,"
 
 N.C. Gen. Stat. §§ 1-277
 
 (a) (2017), 7A-27(b)(3)(a) (2017), or makes an adverse ruling as to personal jurisdiction,
 
 N.C. Gen. Stat. § 1-277
 
 (b) (2017). North Carolina Rule of Appellate Procedure 28(b) sets forth the required contents for an appellant's brief, including the requirement of stating the grounds for appellate review, and specifically sets forth that "[w]hen an appeal is interlocutory, the statement [of grounds for appellate review] must contain sufficient facts and argument to support appellate review on the ground that the challenged order affects a substantial right." N.C. R. App. P. 28(b)(4) (2018).
 

 Defendants made motions to dismiss the complaint under Rules 12(b)(1) (lack of subject matter jurisdiction), 12(b)(2) (lack of personal jurisdiction), and 12(b)(6) (failure to state a claim upon which relief can be granted), as well as on estoppel grounds, all of which were denied by the trial court in its interlocutory order. But as a threshold matter, the statement of the grounds for appellate review in Defendants' brief only argues that the trial court's denial of its Rule 12(b)(2) motion affects a substantial right. Defendants thus fail to satisfy their burden under Appellate Rule 28(b) as to all but their Rule 12(b)(2) argument, which renders Defendants' appeal of the denial of their Rule 12(b)(1), Rule 12(b)(6), and estoppel motions all subject to dismissal.
 
 See
 

 Bezzek v. Bezzek
 
 , --- N.C. App. ----, ----,
 
 824 S.E.2d 865
 
 , 867 (2019) ("When an appeal is interlocutory and not certified for appellate review pursuant to Rule 54(b), the appellant must include in the statement of grounds for appellate review sufficient facts and argument to support appellate review on the ground that the challenged order affects a substantial right. Otherwise, the appeal is subject to dismissal.").
 

 Even had Defendants' brief complied with Appellate Rule 28(b), their appeal of the denial of their Rule 12(b)(1), 12(b)(6), and estoppel
 
 *219
 
 motions would still be dismissed. Regarding the estoppel motion, the denial of a motion to dismiss affects a substantial right when the motion to dismiss "makes a colorable assertion that the claim is barred under the doctrine of collateral estoppel."
 
 Fox v. Johnson
 
 ,
 
 243 N.C. App. 274
 
 , 281,
 
 777 S.E.2d 314
 
 , 321 (2015). Here, Defendants nowhere asserted that the prior action upon which they base their estoppel motion has reached final judgment on the merits, and as such, Defendants failed to make the colorable assertion necessary to claim that the denial of their estoppel motion affects a substantial right.
 
 See
 

 Bishop v. Cty. of Macon
 
 ,
 
 250 N.C. App. 519
 
 , 523,
 
 794 S.E.2d 542
 
 , 547 (2016) (elements of collateral estoppel, including "a prior suit resulting in a final judgment on the merits"). The trial court's denial of Defendants' estoppel motion is therefore interlocutory
 
 *530
 
 and not appealable, and Defendants' appeal thereof is accordingly dismissed.
 

 This Court's decision in
 
 Can Am South, LLC v. State
 
 ,
 
 234 N.C. App. 119
 
 ,
 
 759 S.E.2d 304
 
 (2014), is instructive regarding the Rule 12 motions. In
 
 Can Am
 
 , as here, the defendants moved to dismiss the plaintiff's claims under Rules 12(b)(1) and (2), but not under Rule 12(b)(6), "based on the defense of sovereign immunity," and moved to dismiss under Rule 12(b)(6) "for failure of the complaint to adequately plead."
 
 Id
 
 . at 122,
 
 759 S.E.2d at 307
 
 . The
 
 Can Am
 
 Court dismissed the appeal because the denial of the defendants' Rule 12(b)(6) motion "involve[d] neither a substantial right under section 1-277(a) nor an adverse ruling as to personal jurisdiction under section 1-277(b), and thus is not immediately appealable[.]"
 
 Id
 
 . at 124,
 
 759 S.E.2d at 308
 
 . Concerning the sovereign-immunity-based motions, the
 
 Can Am
 
 Court said that "[a] denial of a Rule 12(b)(1) motion based on sovereign immunity does not affect a substantial right [and is] not immediately appealable under section 1-277(a)," but that "denial of a Rule 12(b)(2) motion premised on sovereign immunity constitutes an adverse ruling on personal jurisdiction and is therefore immediately appealable under section 1-277(b)."
 
 Id. at
 
 122-24,
 
 759 S.E.2d at 307-08
 
 (citations omitted).
 

 Here, following
 
 Can Am
 
 , Defendants' appeal of the denials of their Rule 12(b)(1) and Rule 12(b)(6) motions to dismiss are not immediately appealable and thus not properly before us, and are dismissed. However, as Defendants correctly argue, the denial of their Rule 12(b)(2) motion to dismiss is an adverse ruling on personal jurisdiction. Thus Defendants' appeal thereof is properly before us pursuant to
 
 N.C. Gen. Stat. § 1-277
 
 (b) and we will determine whether the trial court erred in denying that motion.
 

 *220
 

 III. Standard of Review
 

 "The standard of review to be applied by a trial court in deciding a motion under Rule 12(b)(2) depends upon the procedural context confronting the court."
 
 Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.
 
 ,
 
 169 N.C. App. 690
 
 , 693,
 
 611 S.E.2d 179
 
 , 182 (2005) (discussing various procedural contexts). "[U]pon a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of making out a
 
 prima facie
 
 case that jurisdiction exists."
 
 Bauer v. Douglas Aquatics, Inc.
 
 ,
 
 207 N.C. App. 65
 
 , 68,
 
 698 S.E.2d 757
 
 , 761 (2010) (internal citation omitted). Where, as here, the defendant "supplements his motion to dismiss with an affidavit or other supporting evidence,"
 
 [1]
 
 the plaintiff cannot rest on the unverified allegations in the complaint; rather, the plaintiff "must respond by affidavit or otherwise ... setting forth specific facts showing that the court has [personal] jurisdiction."
 
 Banc of Am.
 
 ,
 
 169 N.C. App. at 693-94
 
 ,
 
 611 S.E.2d at
 
 182-83 ;
 
 Bauer
 
 ,
 
 207 N.C. App. at 69
 
 ,
 
 698 S.E.2d at 761
 
 (internal quotation marks, brackets, and citation omitted). If the plaintiff offers no evidence in response, the court considers (1) any allegations in the complaint that are not controverted by the defendant's evidence and (2) all facts in the defendant's evidence, which are uncontroverted because of the plaintiff's failure to offer evidence in response (here, the "Trial Record").
 
 Banc of Am.
 
 ,
 
 169 N.C. App. at 693-94
 
 ,
 
 611 S.E.2d at 183
 
 .
 

 Generally, when this Court reviews a trial court's denial of a Rule 12(b)(2) motion to dismiss, it considers whether the trial court's findings of fact are supported by competent evidence in the record; if so, the findings of fact are conclusive on appeal.
 
 Inspirational Network
 
 , 131 N.C. App. at 235, 506 S.E.2d at 758. Under N.C. Gen. Stat. § 1A-1, Rule 52(a)(2) (2017), however, the
 
 *531
 
 trial court is not required to make specific findings of fact unless a party so requests.
 
 Banc of Am.
 
 ,
 
 169 N.C. App. at 694
 
 ,
 
 611 S.E.2d at 183
 
 . Where, as here, the record contains no indication that the parties requested that the trial court make specific findings of fact, and the order appealed from contains no findings, we presume
 
 *221
 
 that the trial court made factual findings sufficient to support its ruling, and it is this Court's task to review the record to determine whether it contains evidence that would support the trial court's legal conclusions,
 
 Banc of Am.
 
 ,
 
 169 N.C. App. at 695
 
 ,
 
 611 S.E.2d at 183
 
 , and to review the trial court's legal conclusions
 
 de novo
 
 ,
 
 Lulla v. Effective Minds, LLC
 
 ,
 
 184 N.C. App. 274
 
 , 278,
 
 646 S.E.2d 129
 
 , 133 (2007).
 

 III. Analysis
 

 In their Rule 12(b)(2) motion to dismiss, Defendants state, in relevant part, that the trial court "lacks ... personal jurisdiction over them on the basis that they are or were public employees or public officials at all times pertinent to this action and [were] therefore cloaked with sovereign or governmental immunity." By denying this motion, the trial court implicitly found facts supporting its implicit general conclusion that Defendants were subject to personal jurisdiction, and its implicit specific conclusion that Defendants could not shield themselves from suit via the doctrines of sovereign or governmental immunity.
 

 As a technical matter, neither doctrine can itself protect Defendants, since sovereign immunity and governmental immunity only apply in actions brought against state and local governments, respectively, and not in actions brought against individuals like Defendants.
 
 See
 

 Wray v. City of Greensboro
 
 ,
 
 370 N.C. 41
 
 , 47-48,
 
 802 S.E.2d 894
 
 , 898-99 (2017) (describing sovereign and governmental immunity). But Defendants' Rule 12(b)(2) motion claims they are immune by virtue of their claimed status as "public officials," which refers to a related doctrine known as public official immunity.
 
 [2]
 

 Public official immunity is a " 'derivative form' of governmental immunity" that insulates a public official from personal liability for mere negligence in the performance of his duties unless his alleged actions were malicious or corrupt or fell outside and beyond the scope of his duties.
 
 Fullwood v. Barnes
 
 ,
 
 250 N.C. App. 31
 
 , 38,
 
 792 S.E.2d 545
 
 , 550 (2016) (citation omitted);
 
 Schlossberg v. Goins
 
 ,
 
 141 N.C. App. 436
 
 , 445,
 
 540 S.E.2d 49
 
 , 56 (2000).
 

 *222
 
 This definition is dispositive as to one aspect of this case. Since public official immunity may only insulate public officials from allegations of mere negligence, only those of Plaintiffs' causes of action sounding in negligence come within the doctrine's reach. Accordingly, we affirm the trial court's denial of Defendants' motion to dismiss Plaintiffs' first cause of action for intentional infliction of emotional distress, which is an intentional tort claim.
 
 See
 

 Hawkins v. State
 
 ,
 
 117 N.C. App. 615
 
 , 630,
 
 453 S.E.2d 233
 
 , 242 (1995) (affirming trial court's denial of motion to dismiss intentional infliction of emotional distress claim on public official immunity grounds). Moreover, we also affirm the trial court's denial of the motion to dismiss Plaintiffs' fourth cause of action for punitive damages, because if Plaintiffs are successful with their intentional infliction of emotional distress claim, they may also establish a right to punitive damages.
 
 See
 

 Thompson v. Town of Dallas
 
 ,
 
 142 N.C. App. 651
 
 , 656-57,
 
 543 S.E.2d 901
 
 , 905-06 (2001) (affirming denial of summary judgment motion claim seeking relief from punitive damages cause of action brought by public official sued in his individual capacity who raised public official immunity as a defense).
 

 Regarding Plaintiffs' second and third causes of action, for negligent infliction of emotional distress and negligence respectively, we must review the Trial Record to determine
 
 *532
 
 whether it supports a conclusion that Defendants (1) were not public officials (i.e., were mere public employees), (2) acted outside and beyond the scope of their official authority, or (3) acted with malice or corruption.
 

 We address each element in turn.
 

 a. Public Officials
 

 Although public officials may not be held individually liable for mere negligence in actions taken without malice or corruption and within the scope of their duties, public employees may be held individually liable for such actions.
 
 Isenhour v. Hutto
 
 ,
 
 350 N.C. 601
 
 , 608-10,
 
 517 S.E.2d 121
 
 , 127 (1999) (quotation marks and citation omitted).
 

 Our Supreme Court has "recognized several basic distinctions between a public official and a public employee, including: (1) a public office is a position created by the constitution or statutes; (2) a public official exercises a portion of the sovereign power; and (3) a public official exercises discretion, while public employees perform ministerial duties."
 
 Id.
 
 at 610,
 
 517 S.E.2d at 127
 
 . Courts applying this framework have recently held that a defendant seeking to establish public official immunity must demonstrate that all three of the
 
 Isenhour
 
 factors are present.
 

 *223
 

 Leonard v. Bell
 
 , --- N.C. App. ----, ----,
 
 803 S.E.2d 445
 
 , 453 (2017) ("Because we hold that defendants' positions are not created by statute, we need not address the remaining elements to reach the conclusion that defendants are not public officials entitled to immunity.").
 

 We have also noted that, in addition to the
 
 Isenhour
 
 factors, public officials also are often required to take an oath of office, while a public employee is not required to do so.
 
 Fraley v. Griffin
 
 ,
 
 217 N.C. App. 624
 
 , 627,
 
 720 S.E.2d 694
 
 , 696 (2011). But courts considering claims of public official immunity have made clear that, unlike the
 
 Isenhour
 
 factors, an oath of office is not "absolutely necessary[.]"
 
 Baker v. Smith
 
 ,
 
 224 N.C. App. 423
 
 , 431 n.5,
 
 737 S.E.2d 144
 
 , 149 n.5 (2012).
 

 1. Position Created by Constitution or Statute
 

 "A position is considered created by statute when the officer's position ha[s] a clear statutory basis or the officer ha[s] been delegated a statutory duty by a person or organization created by statute or the Constitution."
 
 Id
 
 . at 428,
 
 737 S.E.2d at 148
 
 (internal quotation marks, citations, and emphasis omitted).
 

 Defendants argue that their positions are "created by"
 
 N.C. Gen. Stat. § 157
 
 (2017), but point to no language in our Constitution or any statute expressly creating their positions. Defendants also argue that they have been delegated statutory duties by RHA,
 
 [3]
 
 which is statutorily authorized to (1) "employ ... such other officers, agents, and employees, permanent and temporary, as it may require" and (2) "delegate to one or more of its agents or employees such powers or duties as it may deem proper."
 
 N.C. Gen. Stat. § 157-5
 
 (e) ;
 
 see also
 

 N.C. Gen. Stat. § 157-9
 
 (a) (authorizing RHA to "exercise any or all of the powers herein conferred upon it, either generally or with respect to any specific housing project or projects, though or by an agent or agents which it may designate").
 

 Our case law makes clear that where a statute expressly creates the authority to delegate a duty, a person or organization who is delegated and performs the duty on behalf of the person or organization in whom the statute vests the authority to delegate passes the first the
 
 Isenhour
 
 factor.
 
 Baker
 
 ,
 
 224 N.C. App. at 428-30
 
 ,
 
 737 S.E.2d at 148-49
 
 (holding that where the relevant statute (1) gave the constitutionally-created sheriff the duty to take "care and custody of the jail" and (2) provided the sheriff with authority to "appoint a deputy or employ others to assist him in performing his official duties[,]" an assistant jailer's "position [was]
 

 *224
 
 created by [the North Carolina] Constitution" (emphasis omitted) );
 
 Hobbs v. N.C. Dep't of Hum.
 

 Res.
 
 ,
 
 135 N.C. App. 412
 
 , 421,
 
 520 S.E.2d 595
 
 , 602 (1999) (holding that because the relevant statute gave the director of social services the authority "to delegate to one or more members of his staff the authority to act as his representative," social workers were acting as public officials for public official immunity purposes (citation omitted) ). In their
 
 *533
 
 brief, Plaintiffs concede that
 
 N.C. Gen. Stat. § 157-5
 
 (e) "allows a housing authority to delegate its powers and duties to one or more of its agents," but argue that "it does not require that all employees ... actually receive any delegated duties."
 

 The Trial Record shows that many of Defendants' duties were created by
 
 N.C. Gen. Stat. § 157
 
 , and must therefore have been delegated them by RHA. For example,
 
 N.C. Gen. Stat. § 157-9
 
 empowers the RHA to "prepare, carry out and operate housing projects"
 
 [4]
 
 and to "manage as agent of any city or municipality ... any housing project constructed or owned by such city."
 
 N.C. Gen. Stat. § 157-9
 
 (a). Exhibit 3 to Defendants' memorandum in support of their motion to dismiss describes Lewis' duties as including,
 
 inter alia
 
 , "[p]lann[ing], direct[ing], and coordinat[ing] the work of [subordinates] in facilitating the orderly management and operations of all housing units" and "[d]evelop[ing] and implement[ing] management plans," and Exhibit 4 describes Ayodele's duties as including,
 
 inter alia
 
 , "managing one or more public housing and/or affordable market rate communities" and "overall management of [a public housing and/or affordable market rate community] including planning, budgeting, marketing, and fiscal management." Such job descriptions parrot the duties expressly granted to RHA to operate and manage housing projects, which Plaintiffs concede RHA was authorized to delegate by statute.
 

 The significant overlap between RHA's delegable duties and Defendants' duties as described in Exhibits 3 and 4-which Plaintiffs did not contest with their own proffer of evidence, and which the uncontroverted allegations of Plaintiffs' complaint do not call into question-leads us to conclude that Defendants held positions created by statute.
 

 2. Exercise of a Portion of the Sovereign Power
 

 While the contours of what the sovereign power includes are not clearly defined by our case law, it is evident that a defendant claiming themself a public official for immunity purposes must show that they
 
 *225
 
 have exercised a portion of some power that only the sovereign may exercise, as granted to the sovereign by either the Constitution or a statute.
 
 Compare
 

 Baker
 
 ,
 
 224 N.C. App. at 430
 
 ,
 
 737 S.E.2d at 149
 
 (holding that an assistant jailer exercises a portion of the sovereign power "by detaining misdemeanants and those awaiting trial in the jail"),
 
 with
 

 Mullis v. Sechrest
 
 ,
 
 126 N.C. App. 91
 
 , 98,
 
 484 S.E.2d 423
 
 , 427 (1997) (denying a public school teacher immunity "because his duties at the time the alleged negligence occurred are not considered in the eyes of the law to involve the exercise of the sovereign power"),
 
 rev'd on other grounds
 
 ,
 
 347 N.C. 548
 
 ,
 
 495 S.E.2d 721
 
 (1998) ;
 
 see also
 

 Leonard
 
 , --- N.C. App. at ----,
 
 803 S.E.2d at 453
 
 (noting that "there is nothing uniquely sovereign about the health services provided by [the defendant, a physician,] to plaintiff in this case, except that plaintiff was an inmate" in a state prison).
 

 Plaintiffs concede that the "sovereign powers associated with housing authorities are set forth in
 
 N.C. Gen. Stat. § 157-9
 
 ."
 
 See
 

 N.C. Gen. Stat. § 157-9
 
 (listing the "public powers" of housing authorities like RHA). As noted above, the Trial Record demonstrates significant overlap between the
 
 N.C. Gen. Stat. § 157-9
 
 sovereign powers and the duties delegated to Defendants. Plaintiffs' argument that "there is little overlap between the powers listed and Defendants' duties" is actually a concession regarding the second
 
 Isenhour
 
 factor, since
 
 any
 
 overlap between RHA's public powers and the delegable duties performed by Defendants on RHA's behalf compels a conclusion that Defendants exercised "
 
 a portion
 
 of the sovereign power."
 
 Isenhour
 
 ,
 
 350 N.C. at 610
 
 ,
 
 517 S.E.2d at 127
 
 (1999) (emphasis added);
 
 see also
 

 State v. Hord
 
 ,
 
 264 N.C. 149
 
 , 155,
 
 141 S.E.2d 241
 
 , 245 (1965) ("the incumbent of an office shall involve the exercise of
 
 some portion
 
 of the sovereign power") (emphasis added) ).
 

 We accordingly conclude that Defendants exercised a portion of the sovereign power.
 

 *534
 

 3. Discretion
 

 Our Supreme Court has said that public officials "exercise a certain amount of discretion, while employees perform ministerial duties. Discretionary acts are those requiring personal deliberation, decision and judgment; duties are ministerial when they are absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts."
 
 Meyer v. Walls
 
 ,
 
 347 N.C. 97
 
 , 113,
 
 489 S.E.2d 880
 
 , 889 (1997) (internal quotation marks and citations omitted). The decision making involved must be substantial, as "a mere employee doing a mechanical job, ... must exercise some sort of judgment in plying his shovel or driving his truck -- but he is in no sense invested with
 
 *226
 
 a discretion which attends a public officer in the discharge of public or governmental duties, not ministerial in their character."
 
 Miller v. Jones
 
 ,
 
 224 N.C. 783
 
 , 787,
 
 32 S.E.2d 594
 
 , 597 (1945).
 

 The Trial Record shows that Defendants were tasked with,
 
 inter alia
 
 , "independently" (1) planning, directing, and coordinating the management of RHA housing units, (2) developing, implementing, and executing management plans, (3) formulating various policies and procedures, (4) evaluating overall program and employee performance, (5) recommending and preparing budgets, (6) inspecting properties for conformance with applicable regulations, (7) planning the work of and supervising staff, (8) analyzing rents, (9) counseling residents, and (10) resolving disputes involving residents, duties which led RHA to seek applicants with experience in "management" and "decision making."
 

 Plaintiffs list certain of Defendants' duties that arguably require little judgment, and argue that Defendants "executed ministerial tasks[.]" But as Plaintiffs note, we cannot single out a handful of Defendants' duties in deciding whether they require discretion, but must consider Defendants' duties as a whole.
 
 Baker
 
 ,
 
 224 N.C. App. at 431
 
 ,
 
 737 S.E.2d. at 150
 
 . Moreover, Plaintiffs' argument conflicts with the fact that their complaint, distilled to its essence, alleges that Defendants harmed Plaintiffs by refusing or failing to exercise their discretionary authority to move Plaintiffs to another apartment: Plaintiffs allege therein that Defendants "refused," "ignored," or "denied" Plaintiffs' requests for accommodation. Such allegations speak the language of discretion. The Trial Record contains nothing tending to show that Defendants had any specific, fixed duty to transfer Plaintiffs such that Defendants' denials of Plaintiffs' requests constituted refusals or failures to execute already-made decisions, and any effort to hold Defendants liable for refusing or failing to make a decision that was not theirs to make clearly must fail.
 

 We accordingly conclude that Defendants' positions were discretionary in nature, and that Defendants were public officials in the meaning of
 
 Isenhour
 
 .
 
 [5]
 

 b. Scope of Authority
 

 Even as public officials, sovereign immunity will not shield Defendants from suit for actions they took that fell outside and beyond the scope of their official authority.
 

 *227
 
 But the Trial Record contains no evidence that Defendants exceeded their authority in this case. Plaintiffs' conclusory allegation that "[u]pon information and belief, [Defendants] also exceeded their authority" is insufficient as a matter of pleading to withstand Defendants' motion to dismiss.
 
 Meyer
 
 , 347 N.C. at 114,
 
 489 S.E.2d at 890
 
 (noting that conclusory allegations are insufficient to withstand a motion to dismiss, and that "[t]he facts alleged in the complaint must support such a conclusion"). The complaint elsewhere alleges that Defendants were public housing managers at RHA, and as discussed above, the thrust of Plaintiffs' argument is that Defendants harmed Plaintiffs by refusing or failing to exercise the discretionary authority Defendants had, as RHA public housing managers, to move Plaintiffs to another apartment. Without a clear duty to exercise that authority, which the Trial Record does not reflect, the trial court lacked evidence to conclude that Defendants acted
 
 *535
 
 outside and beyond the scope of their authority by not moving Plaintiffs to another apartment.
 
 See
 

 Clouse v. Gordon
 
 ,
 
 115 N.C. App. 500
 
 , 509,
 
 445 S.E.2d 428
 
 , 433 (1994) ("the law is such that mere inaction does not constitute negligence in the absence of a duty to act" (internal quotation marks and citations omitted) ).
 

 We accordingly conclude that the Trial Record does not support a conclusion that Defendants acted outside and beyond the scope of their official authority.
 

 c. Malice or Corruption
 

 Finally, even as public officials acting within the scope of their official authority, sovereign immunity will not shield Defendants from suit for actions they took which were malicious or corrupt. Plaintiffs make no allegation that Defendants' actions or inactions were corrupt, and we accordingly analyze only whether the Trial Record contains evidence that Defendants' actions or inactions were malicious.
 

 "A malicious act is one which is: (1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another."
 
 Fullwood
 
 , 250 N.C. App. at 38,
 
 792 S.E.2d at 550
 
 (internal quotation marks and citations omitted). This Court has said that public officials are presumed to have executed their duties in good faith, absent substantial evidence to the contrary:
 

 It is well settled that absent evidence to the contrary, it will always be presumed that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law. This presumption places a heavy burden on the party challenging
 
 *228
 
 the validity of public officials actions to overcome this presumption by competent and substantial evidence. Moreover, [e]vidence offered to meet or rebut the presumption of good faith must be sufficient by virtue of its reasonableness, not by mere supposition. It must be factual, not hypothetical; supported by fact, not by surmise.
 

 Strickland v. Hedrick
 
 ,
 
 194 N.C. App. 1
 
 , 10-11,
 
 669 S.E.2d 61
 
 , 68 (2008) (internal quotation marks and citations omitted).
 

 Beyond a conclusory allegation that Defendants "acted with malice," which is insufficient standing alone to withstand Defendants' motion to dismiss,
 
 Meyer
 
 , 347 N.C. at 114,
 
 489 S.E.2d at 890
 
 , the complaint alleges only that Defendants (1) "acted with ... reckless indifference to the [Plaintiffs'] rights" and (2) refused or failed to exercise their discretionary authority to transfer Plaintiffs to another apartment, which Plaintiffs allege was "intended ... to cause [Plaintiffs] extreme emotional distress." This Court has made clear that a plaintiff may not satisfy its burden of pleading malice by alleging the defendant was recklessly indifferent.
 
 Schlossberg v. Goins
 
 ,
 
 141 N.C. App. 436
 
 , 446,
 
 540 S.E.2d 49
 
 , 56 (2000) (citations omitted). And Plaintiffs' other conclusory allegations that Defendants' actions or inactions were intended to cause them harm are insufficient to overcome the presumption that public officials act in good faith.
 
 See
 

 Mitchell v. Pruden
 
 ,
 
 251 N.C. App. 554
 
 , 561-62,
 
 796 S.E.2d 77
 
 , 83 (2017) (noting the plaintiffs' "bare, conclusory allegations that defendant acted with malice" in holding that, "[b]ecause we presume that defendant discharged his duties in good faith and exercised his power in accordance with the spirit and purpose of the law and plaintiffs have not shown any evidence to the contrary, we hold that the [ ] complaint failed to allege facts which would support a legal conclusion that defendant acted with malice").
 

 In sum, we conclude that the Trial Record does not support a conclusion that Defendants acted with malice or corruption.
 

 IV. Conclusion
 

 Because we conclude that Defendants (1) were not mere public employees, (2) did not act outside and beyond the scope of their official authority, and (3) did not act with malice or corruption, we conclude that Defendants were shielded from Plaintiffs' causes of action sounding in negligence by the public official immunity doctrine, and the trial court erred in denying Defendants' Rule 12(b)(2) motion to dismiss Plaintiffs' second and third causes of action for lack of personal jurisdiction.
 

 *229
 
 Defendants' appeal of the denial of their Rule 12(b)(1), 12(b)(6), and estoppel motions is dismissed, the denial of Defendants'
 

 *536
 
 Rule 12(b)(2) motion is affirmed as to Plaintiffs' first and fourth causes of action, and the denial of Defendants' Rule 12(b)(2) motion is reversed as to Plaintiffs' second and third causes of action. This case is remanded to the trial court for entry of an order dismissing Plaintiffs' second and third causes of action and for further proceedings consistent with this opinion.
 

 DISMISSED IN PART, AFFIRMED IN PART, AND REVERSED IN PART.
 

 Chief Judge MCGEE and Judge DIETZ concur.
 

 [1]
 

 Defendants' memorandum in support of their motions to dismiss appended a number of exhibits, most notably "job description[s]" describing the duties of those who hold the positions at RHA that Defendants allegedly held. The record does not reflect any objection by Plaintiffs to Defendants' submission of these documents, or to any use thereof, and Plaintiffs themselves cite to these documents in their appellate brief in describing Defendants' duties at RHA. As such, any argument that these documents do not accurately describe Defendants' duties at RHA is waived,
 
 Inspirational Network, Inc. v. Combs
 
 ,
 
 131 N.C. App. 231
 
 , 238-39,
 
 506 S.E.2d 754
 
 , 759-60 (1998), and we presume that the trial court considered these documents as accurately describing Defendants' duties.
 

 [2]
 

 Given the close relationship between the governmental immunity doctrine and the public official immunity doctrine,
 
 Fullwood
 
 , 250 N.C. App. at 38,
 
 792 S.E.2d at 550
 
 ("The defense of public official immunity is a 'derivative form' of governmental immunity" (citation omitted) ), the fact that Defendants alleged their status as "public officials" in the text of the motion, and the fact that Plaintiffs raised no objection in their brief, N.C. R. App. P. 28(a), we consider Defendants' Rule 12(b)(2) motion to have stated a defense under the public official immunity doctrine.
 

 [3]
 

 Plaintiffs concede that RHA is an organization created by statute.
 

 [4]
 

 "Housing project" is statutorily defined as including "all real and personal property" and "buildings" "constructed [
 
 inter alia
 
 ] [t]o provide safe and sanitary dwelling accommodations" for persons of modest incomes.
 
 N.C. Gen. Stat. § 157-3
 
 (12).
 

 [5]
 

 The Trial Record contains no clear indication of whether Defendants took an oath of office or not. But since this consideration is not dispositive to the
 
 Isenhour
 
 public-official analysis,
 
 see
 

 Baker
 
 ,
 
 224 N.C. App. at
 
 431 n.5,
 
 737 S.E.2d at
 
 149 n.5, and we find the other
 
 Isenhour
 
 factors support our conclusion, we need not analyze this consideration.