IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-742

Filed: 4 August 2020

Cumberland County, No. 16-CVS-3205

MARTIN LEONARD, Plaintiff,

v.

RONALD BELL, M.D., INDIVIDUALLY, PHILLIP STOVER, M.D., INDIVIDUALLY, Defendants.

Appeal by plaintiff from order entered 22 January 2019 by Judge Beecher R. Gray in Superior Court, Cumberland County.  Heard in the Court of Appeals 3 March 2020.

> *Knott & Boyle, PLLC, by Ben Van Steinburgh and W. Ellis Boyle, for plaintiff-appellant.*
>
> *Hedrick Gardner Kincheloe & Garofalo, LLP, by M. Duane Jones and Luke P. Sbarra, for defendant-appellee Bell.*
>
> *Attorney General Joshua H. Stein, by Assistant Attorney General Kenzie M. Rakes, for defendant-appellee Stover.*

STROUD, Judge.

Martin Leonard ("Plaintiff") appeals from an order granting Ronald Bell, M.D.'s and Phillip Stover, M.D.'s (collectively "Defendants") motions to dismiss Plaintiff's complaint with prejudice.  Viewing the record "in the light most favorable to plaintiff," *Preston v. Movahed*, ___ N.C. ___, ___, 840 S.E.2d 174, 190 (2020), because Plaintiff's medical expert reviewed all the medical records pertaining to the

alleged negligence available to Plaintiff after reasonable inquiry prior to filing his complaint, we conclude at the time of the filing of the complaint, Plaintiff had complied with the requirements of North Carolina General Statute § 1A-1, Rule 9(j). The production by Defendants' employer, the North Carolina Department of Public Safety, Division of Adult Corrections ("DAC"), of additional records regarding Plaintiff's medical care four years after the filing of the complaint does not defeat Plaintiff's complaint under Rule 9(j), particularly where the records produced were responsive to Plaintiff's first request for records in 2013 but were not produced until years later. We therefore reverse the trial court's order dismissing Plaintiff's complaint and remand for further proceedings.

## I. Procedural and Factual Background

This case was appealed to this Court previously. *Leonard v. Bell*, 254 N.C. App. 694, 803 S.E.2d 445 (2017). Defendants appealed the trial court's denial of their motion to dismiss based upon public official immunity, and this Court affirmed. This Court set out the background of this case as follows:

> Martin Leonard ("plaintiff") initiated this case against defendants in their individual capacities with the filing of summonses and a complaint on 5 May 2016. In the complaint, plaintiff asserts negligence claims against Dr. Bell and Dr. Stover, both physicians employed by the Department of Public Safety ("DAC"), albeit in different capacities. Those claims are based on allegations that Dr. Bell and Dr. Stover failed to meet the requisite standard of care for physicians while treating plaintiff, who at all

relevant times was incarcerated in the Division of Adult Correction (the "DAC").

Specifically, plaintiff alleges that he began experiencing severe back pain in late October 2012 and submitted the first of many requests for medical care. Over the next ten months, plaintiff was repeatedly evaluated in the DAC system by nurses, physician assistants, and Dr. Bell in response to plaintiff's complaints of increasing back pain and other attendant symptoms. Dr. Bell personally evaluated plaintiff nine times and, at the time of the seventh evaluation in June 2013, submitted a request for an MRI to the Utilization Review Board (the "Review Board"). Dr. Stover, a member of the Review Board, denied Dr. Bell's request for an MRI and instead recommended four weeks of physical therapy. Plaintiff continued to submit requests for medical care as his condition worsened. Upon further evaluations by a nurse and a physician assistant in August 2013, the physician assistant sent plaintiff to Columbus Regional Health Emergency Department for treatment. Physicians at Columbus Regional performed an x-ray and an MRI. Those tests revealed plaintiff was suffering from an erosion of bone in the L4 and L3 vertebra and a spinal infection. Plaintiff asserts Dr. Bell's failure to adequately evaluate and treat his condition, and Dr. Stover's refusal of requested treatment, amounts to medical malpractice.

*Id.* at 695–96, 803 S.E.2d at 447.

Prior to filing the complaint, Plaintiff requested all his medical records from many medical providers and provided these to Dr. Parker McConville to review. On 27 November 2013, Plaintiff made his first request for medical records to DAC and requested "[a]ll medical records, declarations of medical emergencies, sick call filings, and grievances" from "January 1, 2012-Present." Dr. McConville initially reviewed the medical records in April 2014 and then received additional records in April 2016.

He reviewed medical and imaging records from UNC Health Care, Rex Healthcare, Columbus Regional Healthcare, FirstHealth Moore Regional Hospital, Southeastern Regional, Southeastern Health, Wilmington Health Associates, New Hanover Regional Hospital, and DAC. Thus, Plaintiff's initial request for medical records extended back ten months prior to plaintiff's first visit to Defendant Bell. Plaintiff received 512 pages of medical records in response to his initial request, and Dr. McConville reviewed all these records before Plaintiff filed his complaint.

On 5 May 2016, Plaintiff filed the medical malpractice complaint, with the Rule 9(j) certification based upon Dr. McConville's review of all the medical records noted above. On or about 14 October 2016, Plaintiff served his First Request for Production upon Dr. Bell and requested

> [a]ll medical records of any sort in your possession, regarding any health care provider's medical treatment or care of Martin Leonard, including but not limited to: duty log or schedule of when you were on call or physically present at the Prison in 2012 and 2013; all medical billing statements, medical charts, physician's office records, correspondence to or from any person, entity or organization; all hospital or medical records regularly maintained concerning patients such as physicians' notes, nurse or staffing logs, nursing administration reports, incident/occurrence report forms, shift records, psychiatry flow sheets, patient data logs, medication administration logs, physical/occupational therapy notes, nursing notes, and handwritten notes; all orders requesting any laboratory study or test or imaging; all laboratory reports; all radiological images in electronic format and corresponding reports to include MRIs, CT Scans, and photographs; all medication and prescription records; all

surgical and pathology reports; all medical reports furnished routinely or specially to any person, organization, or entity including the patient, any representative of the patient, or any insurance company; and any record of any conversations, correspondence, or emails with any pathologists or other employee or agent of North Carolina Department of Public Safety.

Dr. Bell responded, "The only medical records related to Plaintiff that are in Dr. Bell's possession were produced by Plaintiff's counsel in connection with the pending Industrial Commission matter related to Plaintiff's claims."[1]

On 17 October 2016, Plaintiff served his First Request for Production of documents on Dr. Stover, requesting the same information as the request to Dr. Bell. On 20 September 2017, Dr. Stover responded as follows:

Objection: This request is overly broad, unduly burdensome and not relevant to this matter. Seeks information not reasonably calculated to lead to the discovery of admissible [sic]. This request seeks matters and/or documents protected by the work product doctrine and/or attorney client privilege. As discovery proceeds in this case, Defendant will supplement this response to the extent appropriate under the North Carolina Rule of Civil Procedure.

(Alteration in original.)

---

[1] Plaintiff had also instituted a Tort Claims action before the Industrial Commission arising from the same alleged negligence. At oral argument of this case, counsel noted that the Industrial Commission matter was stayed pending resolution of this case. The record from Defendant's first appeal contains the order staying the Industrial Commission proceedings, and it states in relevant part: "1. The above-captioned action under the State Tort Claim Act is STAYED pending the resolution of the civil action in the General Court of Justice in Columbus County, save discovery. 2. The above captioned case is REMOVED from the active hearing docket and all further proceedings."

Defendants then filed motions to dismiss "pursuant to Rule 12(b)(1), (2), and (6)" addressed in their first appeal. *Leonard v. Bell*, 254 N.C. App. at 696, 803 S.E.2d at 447. The trial court denied the motions on 25 October 2016 and both defendants appealed. *Id.* This Court's opinion in the prior appeal was filed in August 2017, and, upon remand, discovery resumed.

On or about 11 April 2018, Plaintiff served a subpoena upon DAC requesting production of his medical records. Our record does not reveal if DAC itself responded directly to the subpoena, but soon after the subpoena, Dr. Stover supplemented his September 2017 discovery responses.[2] On 19 June 2018, Dr. Stover sent a supplemental document production to Plaintiff including 1172 pages of prison and medical records. Of these documents, 354 pages were some of the same medical records produced in December 2013 by DAC in response to Plaintiff's request prior to filing the complaint, but Dr. Stover provided an additional 818 pages of records from DAC. In their arguments before the trial court and this Court, Defendants stressed o*ne* of these 818 pages of documents included in the new information was a sheet recording Plaintiff's TB skin tests over several years.[3] This document, a "North

---

[2] Since both Defendants are employees of DAC, these documents may have been intended as responsive to the subpoena. But whether defendant Dr. Stover provided the records as a supplement to his prior discovery responses, in response to the subpoena, or for some other reason makes no difference in this analysis.

[3] Defendants noted other information in the records as well, but in their argument regarding records "pertaining to the alleged negligence," the TB skin test form was the primary document they stressed.

Carolina Department of Correction Immunization Record/T.B. Skin Test" form, ("TB skin test form") included entries from 13 July 2011, 29 July 2012, and 2 July 2013. TB skin test records from July 2011, July 2012, and July 2013 were included on this sheet, along with prior years back to 2006. For each year from 2010 until 2013, the sheet also recorded whether Plaintiff was having symptoms of unexplained productive cough, unexplained weight loss, unexplained appetite loss, unexplained fever, night sweats, shortness of breath, chest pain, and increased fatigue. For 2010, this screening noted "yes" for night sweats, chest pain, and increased fatigue. For 2011, each symptom is marked "no." For 29 July 2012, every symptom is marked "no." For 2013, again, every symptom is marked "no."[4] This record of TB skin tests and symptoms was in Plaintiff's DAC medical file as of 1 January 2012 and should have been provided in response to Plaintiff's initial request for records to DAC prior to filing of the complaint, based upon the starting date of Plaintiff's request for records from January 2012 forward, since the July 2012 and July 2013 tests occurred after January 2012 and prior to 27 November 2013, the date of Plaintiff's request. This record was not included in the previous productions of documents to Plaintiff, either upon his request prior to filing the lawsuit, in the Industrial Commission

---

[4] Other medical records from DAC clearly document that Plaintiff was suffering from unexplained weight loss, night sweats, and worsening pain starting in October of 2012. His *eighth* visit to Dr. Bell for these worsening symptoms was on 9 July 2013—only 3 days prior to the entries for the 2013 TB skin test. But the TB skin test form states that he had no symptoms and the entry for "Refer to Physician/Health Department" is also marked "no." Dr. McConville noted this conflict in DAC's records of plaintiff's care in his deposition as discussed in more detail below.

matter, or from Defendants in response to his request for production of documents. Although the TB skin test form was responsive to all of Plaintiff's prior requests, both prior to and after filing his complaint, neither DAC nor the Defendants in this case produced it until nearly four and a half years after the first request.

Neither DAC nor either Defendant ever offered any explanation or excuse for why it was not produced earlier, nor do Defendants argue that the document was not responsive to each of Plaintiff's requests. In addition, this is not a case where the relevant records, for purposes of Defendants' motions to dismiss under Rule 9(j), were in the possession of another medical provider. The relevant records in this case are the medical records of Defendants' employer, DAC; in other words, they are effectively the medical records of Defendants' own care of Plaintiff.

On 25 July 2018, less than a month after producing the additional 818 pages of DAC records to Plaintiff, Defendants took Dr. McConville's deposition. He could not produce or definitively identify all the records he had reviewed before the complaint was filed because his personal copy of Plaintiff's records had been destroyed by a fire in his office. However, he did identify the records based upon the prior responses to discovery. He also discussed his review of the records just produced by Defendant Dr. Stover. Defendant's counsel asked Dr. McConville if the TB skin test form changed "any of [his] opinions in this matter." Dr. McConville testified

neither the TB skin test form nor the other additional records had changed his opinions regarding Plaintiff's medical care.

On 17 December 2018, Dr. Bell filed a motion to dismiss Plaintiff's complaint based upon Civil Procedure Rules 7, 9(j), and 12(b)(6) and alleged that "Plaintiff's reviewing expert, Dr. Parker McConville did not review all medical records pertaining to the alleged negligence that were available to Plaintiff after reasonable inquiry prior to the filing of Plaintiff's complaint." Dr. Stover did not file a written motion but made an oral motion to dismiss for the same reason at the hearing on Dr. Bell's motion. At the hearing, in January 2019, Dr. Bell introduced the records including Plaintiff's TB skin tests covering the years from 2006 to 2013. Plaintiff had a positive test in 2009. As noted above, this record should have been included in Plaintiff's medical records as of January 2012, as it included test results from 2006 until 2013, but it was not produced until June 2018 in Dr. Stover's supplemental production of documents of 818 pages which had not been provided to Plaintiff previously, in either the Industrial Commission matter or in this case.

The trial court concluded Defendants' motions to dismiss should be granted based upon Plaintiff's failure to comply with Rule 9(j):

> (16) The totality of the evidence before the Court indicates Dr. McConville failed to review all medical records pertaining to Defendants' alleged negligence that were available to Plaintiff after reasonable inquiry prior to Plaintiffs' filing of his civil action.

(17) Based on the foregoing, the Court determines Plaintiff has failed to comply with Rule 9(j) of the North Carolina Rules of Civil Procedure and this action is dismissed with prejudice.

Plaintiff timely appealed.

## II.     Standard of Review of Order Addressing Rule 9(j) Motion

Our Supreme Court has recently clarified the standard under which the trial court should consider the issue of compliance with Rule 9(j) and this Court's standard of review of the trial court's order.  In *Preston v. Movahed*, the Supreme Court reversed the dismissal of the plaintiff's claim for medical malpractice for evaluation and treatment of chest pain based upon the trial court's finding that the plaintiff's expert cardiologist "could not reasonably be expected to qualify as an expert witness" against the defendant nuclear cardiologist.  ___ N.C. at ___, 840 S.E.2d at 180.  Although the issue here arises from the adequacy of the medical records provided to Plaintiff for expert review prior to the filing of the complaint, the Supreme Court noted that the "analytical framework set forth in *Moore* applies equally to other Rule 9(j) issues in which 'a complaint facially valid under Rule 9(j)' is challenged on the basis that 'the certification is not supported by the facts.'"  *Id.* at ___, 840 S.E.2d at 183 (quoting *Moore v. Proper*, 366 N.C. 25, 31-32, 726 S.E.2d 812, 817 (2012)).

The Supreme Court noted that both the trial court and this Court must view the evidence regarding the plaintiff's compliance with Rule 9(j) "in the light most favorable to plaintiff." *Id.* at ___, 840 S.E.2d at 190.  The trial court is not to resolve

credibility issues or disputes of fact at this stage in a medical malpractice proceeding but is only to determine if the plaintiff acted reasonably in his efforts to comply with Rule 9(j):

> "Rule 9(j) serves as a gatekeeper, enacted by the legislature, to prevent frivolous malpractice claims by requiring expert review before filing of the action." The rule provides, in pertinent part:
>
>> Any complaint alleging medical malpractice by a health care provider pursuant to G.S. 90-21.11(2)a. in failing to comply with the applicable standard of care under G.S. 90-21.12 shall be dismissed unless:
>>
>>> (1) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care[.]
>>
>> Thus, the rule prevents frivolous claims "by precluding any filing in the first place by a plaintiff who is unable to procure an expert who both meets the appropriate qualifications and, after reviewing the medical care and available records, is willing to testify that the medical care at issue fell below the standard of care."

*Id.* at ___, 840 S.E.2d at 190 (footnote omitted) (citations omitted) (quoting *Vaughan v. Mashburn*, 371 N.C. 428, 434-35, 817 S.E.2d 370, 375 (2018)).

As part of its analysis in *Preston*, the Supreme Court discussed *Moore v. Proper*, which addressed the "manner in which a trial court should evaluate compliance with Rule 9(j), as well as the standard of review for a reviewing court on appeal." *Preston*, ___ N.C. at ___, 840 S.E.2d at 182 (quoting *Moore v. Proper*, 366 N.C. at 26, 726 S.E.2d 814). In *Moore*, the Rule 9(j) analysis was done in the context of the defendant's motion for summary judgment instead of a motion to dismiss:

> In addressing the Rule 9(j) inquiry, the Court explained that "[b]ecause Rule 9(j) requires certification at the time of filing that the necessary expert review has occurred, compliance or noncompliance with the Rule is determined at the time of filing." The Court agreed with previous Court of Appeals precedent holding that "a court should look at 'the facts and circumstances known or those which should have been known to the pleader' at the time of filing," "as any reasonable belief must necessarily be based on the exercise of reasonable diligence under the circumstances[.]" Additionally, the Court noted that "a complaint facially valid under Rule 9(j) may be dismissed if subsequent discovery establishes that the certification is not supported by the facts, at least to the extent that the exercise of reasonable diligence would have led the party to the understanding that its expectation was unreasonable." The Court further explained:
>
> > Though the party is not necessarily required to know all the information produced during discovery at the time of filing, the trial court will be able to glean much of what the party knew or should have known from subsequent discovery materials. But to the extent there are reasonable disputes or ambiguities in the forecasted evidence, the trial court should draw all reasonable inferences in favor of the nonmoving party at this preliminary stage of determining whether the party reasonably

expected the expert witness to qualify under Rule 702. When the trial court determines that reliance on disputed or ambiguous forecasted evidence was not reasonable, the court must make written findings of fact to allow a reviewing appellate court to determine whether those findings are supported by competent evidence, whether the conclusions of law are supported by those findings, and, in turn, whether those conclusions support the trial court's ultimate determination. We note that because the trial court is not generally permitted to make factual findings at the summary judgment stage, a finding that reliance on a fact or inference is not reasonable will occur only in the rare case in which no reasonable person would so rely.

Applying this standard, the *Moore* Court— construing all disputes or ambiguities in the factual record in favor of the plaintiff—determined that plaintiff's complaint complied with Rule 9(j) in that plaintiff reasonably expected her proffered expert to qualify under Rule 702. The Court expressed no opinion on whether the plaintiff's expert would actually qualify under Rule 702 and "note[d] that, having satisfied the Rule 9(j) pleading requirements, plaintiff has survived the pleadings stage of her lawsuit and may, at the trial court's discretion, be permitted to amend the pleadings and proffer another expert" in the event that her proffered expert later failed to qualify under Rule 702.

*Preston*, ___ N.C. at ___, 840 S.E.2d at 183 (first and third alterations in original) (citations omitted).

In *Preston*, the Supreme Court noted that the analytical framework for a Rule 9(j) issue is the same, whether the motion to dismiss is in the form of a motion for

summary judgment or a motion to dismiss under Rule 12(b)(6). *Id.* at \_\_\_, 840 S.E.2d at 183. The trial court must consider the facts and circumstances known to the plaintiff, or which should have been known, at the time of the filing, and if there are any disputes or ambiguities in the evidence, the trial court "should draw all reasonable inferences" in favor of the plaintiff at this preliminary stage of the case:

> While the Rule 9(j) issue in *Moore* arose in the context of a motion for summary judgment and focused specifically on whether the plaintiff's expert was reasonably expected to qualify as an expert witness, we conclude that the analytical framework set forth in *Moore* applies equally to other Rule 9(j) issues in which "a complaint facially valid under Rule 9(j)" is challenged on the basis that "the certification is not supported by the facts." For instance, where, as here, a defendant files a motion to dismiss under Rule 12(b)(6) challenging a plaintiff's facially valid certification that the reviewing expert was willing to testify at the time of the filing of the complaint, the trial court must examine "'the facts and circumstances known or those which should have been known to the pleader' at the time of filing," and "to the extent there are reasonable disputes or ambiguities in the forecasted evidence, the trial court should draw all reasonable inferences in favor of the nonmoving party at this preliminary stage[.]" "When the trial court determines that reliance on disputed or ambiguous forecasted evidence was not reasonable, the court must make written findings of fact to allow a reviewing appellate court to determine whether those findings are supported by competent evidence."
>
> We stress that Rule 9(j) is unique and that because the evidence must be taken in the light most favorable to the plaintiff, the nature of these "findings," and the "competent evidence" that will suffice to support such findings, differs from situations where the trial court sits as a fact-finder. We do not view the legislature's enactment

of Rule 9(j) as intending for the trial court to engage in
credibility determinations and weigh competent evidence
at this preliminary stage of the proceedings.

*Id.* at ___, 840 S.E.2d at 183-84 (citations omitted).

Thus, under *Preston* and *Moore*, we review *de novo* the trial court's order regarding Plaintiff's compliance with Rule 9(j). *Id.* In this *de novo* review, we do not defer to the trial court's findings of fact but review the Plaintiff's forecast of evidence in the light most favorable to Plaintiff. *Id.* at ___, 840 S.E.2d at 181-82 ("[W]e conclude that both of the lower courts erred in failing to view the evidence regarding [plaintiff's expert's] willingness to testify under Rule 9(j) in the light most favorable to plaintiff and that the Court of Appeals, in its *de novo* review, erred by deferring entirely to the findings of the trial court.").

### III.    Rule 9(j) Compliance

There is no dispute in this case that Plaintiff's complaint was facially compliant with Rule 9(j) and that Dr. McConville reviewed the medical care and medical records *available* to Plaintiff pertaining to the alleged negligence before Plaintiff filed the complaint. This appeal does not present any question regarding Dr. McConville's qualifications as an expert witness under Rule 702. Here, the issue is whether Dr. McConville reviewed "all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry." N.C. Gen. Stat. § 1A-1, Rule 9(j). In conducting our analysis of this question, we must consider

"'the facts and circumstances known or those which should have been known to the pleader' at the time of filing. We find this rule persuasive, as any reasonable belief must necessarily be based on the exercise of reasonable diligence under the circumstances." *Moore*, 366 N.C. at 31, 726 S.E.2d at 817 (citation omitted) (quoting *Trapp v. Maccioli*, 129 N.C. App. 237, 241, 497 S.E.2d 708, 711 (1998)).

The trial court's order includes the following findings of fact:

> (5) Plaintiff had a positive PPD test in July 2009 that indicated the potential presence of tuberculosis in his system. At the time Plaintiff's complaint was filed, it was apparent that his prior tuberculosis exposure and related treatment were relevant to his medical malpractice claim. (Compl. ¶¶ 93,94,114). Yet, Plaintiff's medical records relevant to his tuberculosis history and related treatment were not requested from the Department of Correction. Rather, the request was limited to Plaintiff's medical records from, "January 1, 2012- Present."

> (6) Plaintiff designated Dr. Parker McConville ("Dr. McConville") as his Rule 9(j)expert.

> (7) Plaintiff's Rule 9(j) expert, Dr. Parker McConville, was deposed on July 25, 2018.

> (8) Dr. McConville testified as his deposition that Plaintiff's medical records related to Plaintiff's positive tuberculosis test and subsequent treatment and monitoring were relevant to the alleged negligence of Dr. Bell in that Dr. Bell should have reviewed these records and been aware of their contents in developing his differential, diagnosis related to Plaintiff's symptoms.

> (9) The Court finds that based on Dr. McConville's own testimony, the medical records related to Plaintiff's positive tuberculosis test and subsequent treatment and

monitoring are pertinent to the alleged negligence of Dr. Bell.

(10) Dr. McConville further testified at his deposition, however, that he had not received or reviewed the medical records related to Plaintiff's positive tuberculosis test and subsequent treatment and monitoring and was not aware of the content of those records despite being aware of Plaintiff's prior tuberculosis exposure during his Rule 9(j) review in this matter and prior to the filing of Plaintiff's Complaint.

(11) Based on the documentary exhibits submitted by counsel at the hearing on the Motion, including the Authorization for Release of Information submitted to the North Carolina Department of Correction and signed by Plaintiff on October 12, 2013, it does not appear the medical records related to Plaintiff's positive tuberculosis test and subsequent treatment and monitoring were requested from the Department of Correction and the Court therefore finds there was no "reasonable inquiry" into the availability of these records as required by Rule 9(j).

Even if this Court were bound by the trial court's findings of fact if supported by competent evidence—and it is not, according to *Preston*—Finding 5 is not accurate. Plaintiff's TB skin test form should have been included in the records Plaintiff received prior to filing his complaint. Although the form goes back to tests from 2006, the form was part of his existing record as of 1 January 2012.

The trial court also made the following pertinent conclusions of law:

(12) A civil action alleging medical malpractice will receive strict consideration for Rule 9(j) compliance and is subject to dismissal without strict statutory compliance.

*Thigpen v, Ngo*, 355 N.C. 198, 202, 558 S.E.2d 162, 165 (2002) (internal citations omitted).

(13) A Rule 9(j) motion does not contain a procedural mechanism by which a defendant may file a motion to dismiss a plaintiff's complaint. *See, e.g.*, *Barringer v. Forsyth County Wake Forest University Medical Center*, 197 N.C; App. 238, 255-256, 677 S.E.2d 465, 477 (2009). "The Rules of Civil Procedure provide other methods by which a defendant may file a motion alleging a violation of Rule 9(j). E.G., N.C.G.S. § 1A-1, Rules 12, 41, and 56. Rule 9(j) does not itself, however, provide such a method." *Id.* In such a case, the Court's analysis is not whether a genuine issue of material fact exists, or whether the evidence is viewed in the light most favorable to Plaintiff, but a question of law. *Id.* *See also Rowell v. Bowling*, 191 N.C. App. 691, 695,678 S.E.2d 748, 751 (2009) (stating a trial court's review of a Rule 9(j) motion is a question of law, and the Court is not to inquire into the evidence in the light most favorable to plaintiff); *Phillips v. A Triangle Women's Health Clinic*, 155 N.C. App. 372, 316, 573 S.E.2d 600,603 (2002) (stating compliance with Rule 9(j) is a question of law, not a question of fact).

(14) A complaint facially valid under Rule 9(j) may be dismissed if subsequent discovery establishes that the Rule 9(j) certification is not supported by the facts. *See, e.g, Moore v. Proper*, 366 N.C. 25 at 32,726 S.E.2d at 7l7; *Ratledge v. Perdue*, 239 N.C. App. 377, 381, 773 S.E.2d 315, 318 (2015); *McGuire v. Riedle*, 190 N.C. App. 785, 786, 661 S.E.2d 754,756 (2008); *Winebarger v. Peterson*, 182 N.C. App. 510, 514, 642 S.E.2d 544, 547 (2007).

(15) Rule 9(f) contains no good-faith exception. When the language of a statute is clear and without ambiguity, it is the duty of the Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required. *Oxedine v. TWL, Inc.*, 184 N.C. App. 162, 167, 645 S.E.2d 864, 867 (2007).

(16) The totality of the evidence before the Court indicates Dr. McConville failed to review all medical records pertaining to Defendants' alleged negligence that were available to Plaintiff after reasonable inquiry prior to Plaintiffs' [sic] filing of his civil action.

(17) Based on the foregoing, the Court determines Plaintiff has failed to comply with Rule 9(j) of the North Carolina Rules of Civil Procedure and this action is dismissed with prejudice.

Based upon the trial court's order, it is apparent that the trial court did not view the forecast of evidence "in the light most favorable to the Plaintiff" as required by *Moore* and *Preston*. Instead, the trial court concluded that

"Rule 9(j) does not itself, however, provide such a [procedural mechanism by which a defendant may file a motion to dismiss a plaintiff's complaint]." In such a case, the Court's analysis is not whether a genuine issue of material fact exists or whether the evidence is viewed in the light most favorable to Plaintiff, but a question of law.

. . . .

(15) Rule 9(j) contains no good-faith exception. . . .

(16) The totality of the evidence before the Court indicates Dr. McConville failed to review all medical records pertaining to the alleged negligence that were available to Plaintiff after reasonable inquiry prior to Plaintiff's filing of his civil action.

(Citations omitted).

The trial court's order focused on the first portion of the phrase in Rule 9(j): "all medical records *pertaining to* the alleged negligence." N.C. Gen. Stat. § 1A-1,

Rule 9(j)(1) (emphasis added). The trial court found that because Plaintiff did not provide Dr. McConville with his records from DAC prior to January 2012, and because the ultimate diagnosis was a spinal infection caused by tuberculosis and Plaintiff had first had a positive TB test in 2009, Plaintiff had not provided "all medical records pertaining to the alleged negligence." This analysis overlooks the actual allegation of negligence, which is not specifically a failure to diagnose and treat tuberculosis; "Plaintiff asserts Dr. Bell's failure to adequately evaluate and treat his condition, and Dr. Stover's refusal of requested treatment, amounts to medical malpractice." *Leonard v. Bell*, 254 N.C. App. at 696, 803 S.E.2d at 447. The allegation is negligence in the evaluation of Plaintiff's worsening back pain and other symptoms over a period of months. But it is not this Court's role in regard to ruling on a Rule 9(j) motion to determine the importance or weight of additional medical records or to rule on how "pertinent" the records of Plaintiff's diagnosis and treatment of tuberculosis prior to 2012 may be to a determination of liability in this case. Based upon the record in this case, that issue is a factual dispute to be addressed by medical experts and resolved by a jury.

After Defendant Dr. Stover provided additional DAC records in 2018 regarding Plaintiff's care and Dr. McConville reviewed this information, Dr. McConville testified in his deposition that the additional records did not change his opinion regarding Defendants breach of the standard of care in Plaintiff's medical treatment.

Defendant's counsel asked Dr. McConville if the TB skin test form changed "any of [his] opinions in this matter." Dr. McConville testified it did not change his opinions. He noted that he "would question [the TB skin test form's] accuracy first of all" because it conflicts with "what was documented in [Dr. Bell's] notes from the nurses and the P.A. and Dr. Bell, the answer to some of these questions [regarding symptoms] would be yes. So I'm not sure why this doesn't match up with his records." In response to further questions, he clarified that even if the TB skin test form was "accurate," his opinions had not changed. He explained that "the notes from the physicians and the P.A. and the nurses" contradicted the notations on the TB skin test form that Plaintiff had no symptoms. In addition, he noted even if Plaintiff had not been having weight loss, fever, or night sweats, Dr. Bell had seen Plaintiff about nine times over the

> course of about seven or eight months complaining of back pain, then radicular pain, other physical symptoms like weakness in his legs. And--and I believe he complained of numbness at some point. . . . [T]here's still a process going on that has not been adequately investigated and--basically in my opinion. So the standard of care for that would have been . . . further testing, whether it be via an MRI or a CT scan with contrast or bloodwork, you know, or--or a referral to a specialist.

He further explained that since Dr. Bell had prescribed

> three different NSAIDs I believe--was it--ibuprofen, Voltaren, and Naprosyn, all of which would have suppressed a fever or temperature. . . . But if he did have a temperature, that may have masked the-- the fever. So

> that's another thing . . . to consider--you know, that I had hoped Dr. Bell would have considered because he was prescribing them.

As in *Preston*, there is a dispute regarding how to interpret certain medical records and the basis for any change, or lack of change, in an expert's opinion regarding the standard of care and an appropriate course of evaluation and treatment. But it is not the role of the trial court or this Court, at this early stage in the case, to resolve any ambiguities or issues of fact against the Plaintiff. Instead, the trial court, and this Court, must view the evidence in the light most favorable to the plaintiff. *Preston*, ___ N.C. at ___, 840 S.E.2d at 181-82.

The primary issue under the facts of this case is not whether the additional records produced by DAC in 2018 were "pertinent" to the alleged negligence. The question is whether Plaintiff made "reasonable inquiry" to obtain all the medical records pertaining to the alleged negligence. The trial court did not address this issue except to note that "Rule 9(j) contains no good-faith exception," which essentially acknowledges Plaintiff's "good faith" in requesting records but holds Plaintiff to the impossible standard of ensuring that every medical provider's response to a record request is absolutely complete and accurate.

In addition, the trial court's Finding of Fact 5 states that Plaintiff's initial request for records to DAC, did not include records regarding "his tuberculosis history and related treatment." But Plaintiff's initial request asked for "*[a]ll* medical records,

declarations of medical emergencies, sick call filings, and grievances" from "January 1, 2012-Present." (Emphasis added.) Plaintiff's records related to tuberculosis, including the TB skin test form, which was the focus of Defendants' motions to dismiss, would have been included in a complete response to a request for "all" of the records for this time period. Plaintiff's request was not limited to any particular type of records or related to any particular diagnosis; he requested "all" of his medical records from DAC, as is required by Rule 9(j).

Prior to filing the complaint, Plaintiff requested records from DAC and other medical providers outside DAC who evaluated and treated Plaintiff. The record demonstrates that Plaintiff made "reasonable inquiry" to obtain his medical records, and the trial court did not find otherwise. Defendants have not identified a reason plaintiff should have known that DAC had failed to provide the records he requested in 2013. It is apparent from the records themselves the TB skin test form stressed by Defendants before the trial court and this Court should have been included in DAC's response to Plaintiff's first request for medical records, as it was part of Plaintiff's existing medical records with DAC on 1 January 2012 and at the time of his request.

The trial court also found that Plaintiff's diagnosis and treatment for TB were pertinent to the alleged negligence. Even if the records are "pertinent," the question is whether plaintiff provided to Dr. McConville *all medical records* pertaining to the

alleged negligence that are available to the plaintiff *after reasonable inquiry.*" N.C. Gen. Stat. § 1A-1, Rule 9(j)(1) (emphasis added). Rule 9(j) does not ask the plaintiff to make a selective request for the medical records he deems "pertinent" to his medical condition. For example, instead of requesting *all* his medical records from 1 January 2012 forward, if Plaintiff had requested DAC to produce Plaintiff's medical records regarding his diagnosis and treatment for tuberculosis, Defendants would have a valid objection to Plaintiff's limiting the records to "certain records" the plaintiff deemed relevant. This type of limited review of medical records has been specifically disapproved by *Fairfield v. WakeMed*, 261 N.C. App. 569, 821 S.E.2d 277 (2018). Instead, Rule 9(j) requires the plaintiff to make "reasonable inquiry" for production of "*all* medical records pertaining to the alleged negligence" and to have the expert witness review all of the records "available to plaintiff after reasonable inquiry." N.C. Gen. Stat. § 1A-1, Rule 9(j)(1) (emphasis added). The "alleged negligence" here was Defendants' failure to evaluate and diagnose Plaintiff's medical issues over a period of months beginning at the end of 2012, not whether Plaintiff had received proper care for his initial diagnosis of tuberculosis prior to 2012. And although the TB skin test form was "pertinent to the alleged negligence," it also should have been provided in response to Plaintiff's initial request for medical records prior to filing his complaint. If DAC had provided this form in response to Plaintiff's request *prior* to filing the lawsuit, it is possible Plaintiff would have then requested

additional records going back to Plaintiff's initial positive TB skin test, but DAC's response was incomplete, and the TB skin test form was not provided. Defendants have not identified anything in the records produced that may have alerted Plaintiff of a reason to request more information. Instead, the record demonstrates that Plaintiff's requests for all medical records from January 2012 was reasonable and that Plaintiff provided all the records reasonably available to him to Dr. McConville. The fact that DAC produced some records which include "pertinent" information several years after Plaintiff's record requests and Defendants' responses to discovery which did not reveal the records does not require dismissal of Plaintiff's complaint.

Plaintiff's symptoms and complaints of back pain started in October 2012; his symptoms progressed to include chills, unexplained weight loss, and worsening pain over the next several months. He saw Dr. Bell nearly every month for about 10 months. There is also no indication Dr. Bell asked Plaintiff about his TB status or consulted Plaintiff's DAC medical records which would have revealed this information.[5] At the beginning of Plaintiff's course of treatment, the cause of his back pain was not obvious to anyone. Both Defendants presumably would have reviewed Plaintiff's medical records maintained by the facility in which they were employed, including Plaintiff's TB skin test results from tests conducted at that same facility as

---

[5] In August of 2013, Plaintiff informed physicians at New Hanover Regional Hospital that he had previously been exposed to TB. However, his initial diagnosis of the infection in his back was attributed to E. coli. TB was not identified as the cause until October of 2013, when Plaintiff was treated at UNC Health Care.

part of his evaluation of Plaintiff's symptoms. If they failed to do so, that failure could be pertinent as it may tend to support Plaintiff's claim of breach of the standard of care. But Plaintiff's claim is not subject to dismissal based upon DAC's failure to give a complete response to Plaintiff's initial request for his records, as he made "reasonable inquiry" for "all medical records pertaining to the alleged negligence" as required by Rule 9(j). N.C. Gen. Stat. § 1A-1, Rule 9(j)(1).

Rule 9(j) notably does *not* require a plaintiff to provide "all" medical records in existence regarding the plaintiff's medical condition, even years prior to a plaintiff's medical treatment and prior to the alleged negligence, to an expert for review prior to filing suit. *See* N.C. Gen. Stat. § 1A-1, Rule 9(j). Many factors may be pertinent to a medical diagnosis, even going back many years before the alleged negligent care which is the subject of the claim. Such a standard would likely be nearly impossible to meet; if even one medical provider inadvertently omitted a single page of records, the plaintiff's case would be subject to dismissal. Instead, Rule 9(j) sets a high but reasonable standard. *See id.* It requires the plaintiff to make "reasonable inquiry" for "all medical records pertaining to the alleged negligence" prior to filing suit and to have a medical expert review all the records "available to the plaintiff" after "reasonable inquiry." *Id.* After filing the complaint, Plaintiff served discovery requests for medical records on both Defendants in this case and subpoenaed records from DAC. Both Defendants had effectively certified by their discovery responses

that Plaintiff already had "all" of the medical records, to the best of their knowledge.[6]

Yet the recently-produced records upon which they based their motion to dismiss were records from the very medical facility where they were employed—not records from another medical provider they may not have been aware of or records unavailable to them.

Defendants argue that this case is controlled by *Fairfield v. WakeMed*, 261 N.C. App. 569, 821 S.E.2d 277. But *Fairfield* is not applicable to this case. In *Fairfield*, the plaintiff's certification was not in accord with Rule 9(j), as the complaint stated:

> Counsel for the Plaintiffs hereby certify and affirm, that prior to the filing [sic] this lawsuit, pursuant to Rule 9 (j) of the North Carolina Rules of Civil Procedure, that *certain medical records and the medical care* received by Mrs. Fairfield has been reviewed by a physician who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical standard of care provided by Defendants did not comply with the applicable standard of care.

261 N.C. App. at 571, 821 S.E.2d at 279 (alteration in original) (emphasis added).

---

[6] Defendants argue Dr. McConville's inability to review the TB skin test form prior to the filing of the complaint defeats Plaintiff's malpractice claim because this information was crucial in Plaintiff's diagnosis. But Dr. McConville testified this information did not change his opinion. And viewing the evidence in the light most favorable to Plaintiff, as *Preston* directs, according to their own discovery responses, Defendants themselves apparently did not review his TB skin test results which were kept in the DAC medical files or they did not consider this to be "pertinent" to Plaintiff's evaluation. Their argument would tend to support Plaintiff's argument regarding negligence in failing to suspect a TB-related infection, since they either (1) did not review the TB skin test form when treating Plaintiff or (2) reviewed it but still did not suspect TB *and* misrepresented the records they relied upon in discovery.

This Court noted Rule 9(j) does not allow the plaintiff to have his expert review only "certain" chosen records regarding the medical care; the expert must review *all records reasonably available* to plaintiff:

> Allowing a plaintiff's expert witness to selectively review a mere portion of the relevant medical records would run afoul of the General Assembly's clearly expressed mandate that the records be reviewed in their totality. Rule 9(j) simply does not permit a case-by-case approach that is dependent on the discretion of the plaintiff's attorney or her proposed expert witness as to which of the available records falling within the ambit of the Rule are most relevant. Instead, Rule 9(j) requires a certification that *all* "medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry" have been reviewed before suit was filed.
>
> The certification here simply did not conform to this requirement. Therefore, the trial court properly ruled that Plaintiffs had failed to comply with Rule 9(j).

*Id.* at 574-75, 821 S.E.2d at 281 (citation omitted).

Plaintiff had requested all of his medical records from DAC and the particular record Defendants focus on as "pertinent" to the alleged negligence should have been included in a complete response to the request. The TB skin test form, finally produced over four years after Plaintiff's first request to DAC, was clearly responsive to Plaintiff's initial request for records. The problem arose not from Plaintiff's request for records but from DAC's incomplete response.

The record in question was held by DAC but based upon our record was not included in any of the records produced by any other medical group or any of Plaintiff's treating physicians, including Defendants. Defendants do not argue that Plaintiff's initial request for records was unreasonable or insufficient, but they contend it should have extended back further before his diagnosis. Plaintiff's request started with records from 1 January 2012, about nine months prior to Plaintiff's initial visit to Dr. Bell.[7] Defendants have not demonstrated that the time period of this request is unreasonable, particularly since the records in question, particularly the TB skin test form, should have been produced in response to Plaintiff's first request. Although the sheet included tests from prior years, it also included tests for 2012 and 2013. The relevant fact in this case, for purposes of Plaintiff's medical malpractice claim, is whether TB should have been part of the differential diagnosis by Dr. Bell much earlier in his treatment of Plaintiff. The TB skin test form—which should have been produced in the records Plaintiff requested prior to filing suit—shows Plaintiff first had a positive TB test in 2009. Defendants have not demonstrated why Plaintiff's initial request should have extended back some period

---

[7] Since Defendants have not yet presented any expert medical opinions regarding the scope of records which should have been considered "pertinent" to the alleged negligence, and Plaintiff's expert testified he would not change his opinion based upon the newly-produced records, Defendants ask this Court to exercise a level of medical expertise it does not have—and could not exercise even if it did—regarding the potential relevance of Plaintiff's medical care several *years* before the alleged negligence.

of time prior to 1 January 2012, since the record in question was responsive to Plaintiff's initial request.[8]

Nor have Defendants shown Plaintiff should have known, based upon any characteristics of the records produced, that the records produced in response to his initial request were not complete. The medical providers produced hundreds of pages of records and there was no way for Plaintiff to tell if something had been omitted. Plaintiff made "reasonable inquiry" for all of his "medical records pertaining to the alleged negligence" prior to filing suit and then requested records again after filing suit. N.C. Gen. Stat. § 1A-1, Rule 9(j). Plaintiff received hundreds of pages of medical records from many providers, some duplicative. Even if we assume DAC and Defendants were merely negligent in failing to find all of the records when Plaintiff first requested them, and not that they intentionally withheld them to defeat Plaintiff's malpractice claim, Plaintiff made reasonable inquiry and his expert witness reviewed all of the records he received.

IV.    Conclusion

---

[8] Plaintiff's expert was aware of his positive TB skin tests based upon other information in Plaintiff's medical records and considered his medical history as part of his initial opinion developed prior to the filing of the complaint. Records from Plaintiff's treating physicians show they were also aware of his positive TB history. Defendants have not demonstrated why the one-page TB skin test form or other documents produced in 2018 would have made any meaningful difference in the expert review of the medical care. After reviewing the additional records, Dr. McConville testified that they did not change his opinion.

Plaintiff made reasonable inquiry for all of his medical records pertaining to the alleged negligence and he provided these records to his expert witness for review prior to filing of the complaint as required by North Carolina General Statute § 1A-1, Rule 9(j).  We reverse the trial court's order dismissing Plaintiff's complaint based upon Rule 9(j) and remand for further proceedings.

REVERSED AND REMANDED.

Chief Judge McGEE concurs.

Judge TYSON dissents by separate opinion.

TYSON, Judge, dissenting.

Plaintiff's undisclosed test for tuberculosis occurred more than three years prior to any treatment of Plaintiff by Defendants in 2012 and 2013. Nothing shows Defendants were privy to or aware of Plaintiff's prior tuberculosis test. This prior 2009 test was part of Plaintiff's medical history. Plaintiff failed to request and provide these records for Dr. McConville to review.

Dr. McConville's Rule 9(j) certification opines Defendants' treatment of Plaintiff failed to meet the statutory standard of care by their failing to consider Plaintiff's prior and undisclosed history of tuberculosis. Plaintiff's remedy, if any, is properly pursued before the Industrial Commission. The trial court's dismissal is properly affirmed. I respectfully dissent.

## I. Rule 9(j)

Rule 9(j) is both a threshold and gatekeeper statute. It was enacted to prevent frivolous malpractice claims "by *precluding any filing in the first place* by a plaintiff who is unable to *procure an expert* who both meets the appropriate qualifications and, *after reviewing* the medical care and *available records*, is willing to testify that the medical care at issue fell below the standard of care." *Vaughan v. Mashburn*, 371 N.C. 428, 435, 817 S.E.2d 370, 375 (2018) (emphasis supplied).

Rule 9(j) requires a plaintiff asserting medical malpractice to make "reasonable inquiry" for production of "all medical records pertaining to the alleged negligence"

and to have his expert witness to review all records "available to plaintiff after reasonable inquiry." N.C. Gen. Stat. § 1A-1, Rule 9(j)(1) (2019).

## A. Proper Standard of Review

The trial court's order accurately reflects the statute's mandate that a medical malpractice complaint is to be strictly reviewed for Rule 9(j) compliance and is properly dismissed in the absence of Plaintiff's and his expert's strict statutory compliance therewith. *Thigpen v. Ngo*, 355 N.C. 198, 202, 558 S.E.2d 162, 165 (2002).

> [W]here, as here, a defendant files a motion to dismiss under Rule 12(b)(6) challenging a plaintiff's facially valid certification that the reviewing expert was willing to testify at the time of the filing of the complaint, *the trial court must examine the facts and circumstances known or those which should have been known to the pleader' at the time of filing*

*Preston v. Movahed*, 374 N.C. 177, 189 840 S.E.2d 174, 183 (2020) (emphasis supplied).

The majority's opinion asserts: "The relevant records in this case are the medical records of Defendants' employer, DAC; in other words, they are effectively the medical records of Defendants' own care of Plaintiff." Contrary to the majority's notion, Plaintiff bears the burden to secure all his records needed to allow his asserted expert witness to review and to certify Plaintiff's threshold compliance with Rule 9(j) with history and records "*known or those which should have been known to the pleader at the time of filing.*" *Id.* (emphasis supplied). The majority's opinion correctly notes

Dr. Bell's response to Plaintiff's request: "The only medical records related to Plaintiff that are in Dr. Bell's possession were produced by Plaintiff's counsel in connection with the pending Industrial Commission matter related to Plaintiff's claims."

Plaintiff's complaint of Defendants' alleged individual actions and liabilities are asserted in superior court, and not as public officials of the DAC before the Industrial Commission. DAC's actions or omissions relative to Plaintiff's undisclosed medical records are irrelevant and cannot be imputed to Defendants in this action. *See Leonard v. Bell*, 254 N.C. App. 694, 705, 803 S.E.2d 445, 453 (2017) ("*Leonard I*").

As noted, our Supreme Court in *Preston* held: "The trial court must examine the facts and circumstances, *known or those which should have been known to the pleader*, at the time of filing . . . , *and* [*if any*] *disputes* or ambiguities in the forecasted evidence, the trial court should draw all reasonable inferences in favor of the plaintiff." *Preston*, 374 N.C. at 189, 840 S.E.2d at 184 (emphasis supplied) (internal quotation marks and citations omitted).

Here, no "disputes or ambiguities in the evidence" exist. *Id.* Plaintiff admits knowledge of his prior positive tuberculosis test. He also admits not informing neither his expert witness nor Defendants of his prior test in his medical history. The majority's opinion erroneously applies analysis from *Preston* to require and to "draw all reasonable inferences in favor of the [plaintiff]" where the record shows no "disputes or ambiguities in the evidence" exist. *Id.*

- 3 -

A medical malpractice complaint, even if initially facially valid under Rule 9(j), shall be dismissed when subsequent events establish the Rule 9(j) certification is not supported or is false. *Moore v. Proper*, 366 N.C. 25, 32, 726 S.E.2d 812, 817 (2012). The appellate court's review of undisputed facts is purely a question of law, not a factual review in the light most favorable to Plaintiff. *Id.*; *see Preston*, 374 N.C. at 189, 840 S.E.2d at 184.

In *Preston,* our Supreme Court stated the "analytical framework set forth in *Moore* applies equally to other Rule 9(j) issues in which 'a complaint facially valid under Rule 9(j)' is challenged on the basis that 'the certification is not supported by the facts.'" *Preston*, 374 N.C. at 189, 840 S.E.2d at 183 (quoting *Moore v. Proper*, 366 N.C. at 31-32, 726 S.E.2d at 817).

In both *Moore* and in *Preston,* the Court was reviewing a summary judgment order, while the dismissal order before us does not raise or resolve credibility issues or show any ambiguities or disputes of fact. The sole issue before us is the trial court's dismissal based upon Plaintiff's and his expert witness' admitted failures to request and review applicable records and to strictly comply with Rule 9(j) to file the complaint. *Vaughan,* 371 N.C. at 434-35, 817 S.E.2d at 375. That order is properly affirmed.

B. Plaintiff's Failure to Request

On 27 November 2013, Plaintiff made his first request for medical records to DAC. He specifically requested "[a]ll medical records, declarations of medical emergencies, sick call filings, and grievances" *from "January 1, 2012-Present."* Plaintiff's initial medical records request states a specific beginning date that is approximately ten months *prior to* Plaintiff's *first visit* to Defendant, Dr. Bell. The record does not show Plaintiff made any medical record requests upon Dr. Bell or Dr. Stover in their individual capacities.

Plaintiff received 512 pages of DAC medical records in response to his post January 1, 2012 request. Dr. McConville was provided all these responsive DAC records to review and provide his Rule 9(j) certification to challenge Defendants' compliance with the standard of care before Plaintiff filed his initial and subsequent complaints.

The trial court's unchallenged Finding of Fact 5 states Plaintiff's initial request for records to DAC, did not include any records regarding "his tuberculosis history and related treatment." Plaintiff's initial request specifically asked for "[a]ll medical records, declarations of medical emergencies, sick call filings, and grievances" *from "January 1, 2012-Present,"* which pre-dates by months *any care* rendered by Defendants.

The trial court also found Plaintiff had failed to request or provide Dr. McConville with his records from DAC prior to 1 January 2012. This finding of fact

is also unchallenged.  Because the ultimate diagnosis was a spinal infection caused by tuberculosis, and Plaintiff had a positive TB test in 2009, the trial court correctly found Plaintiff had failed to provide Dr. McConville with "all medical records pertaining to the alleged negligence" by Defendants and properly dismissed the complaint.

Dr. McConville condemns Defendants for breach of their statutory standard of care by not reviewing a 2009 PPD test, which Plaintiff did not disclose, request, or provide, and which he did not review prior to rendering, and upon which he bases his certification.  It is the Plaintiff-patient's duty to provide and fully disclose their prior medical history to subsequent treating physicians and Rule 9(j) expert witness. *See Lowe v. Branson Auto.*, 240 N.C. App. 523, 534, 771 S.E.2d 911, 918 (2015) ("[P]laintiff's [rejected] claim for benefits hinged on . . . plaintiff's failure to disclose his prior back problems . . . and the doctors' reliance on plaintiff's incomplete medical history.").

Plaintiff makes no assertion or showing this 2009 PPD test was disclosed or available to Defendants in their individual capacities during their treatment of Plaintiff in late 2012 through mid-2013.  If knowledge of this undisclosed medical record is to be imputed to them by virtue of their employment by DAC, Plaintiff's claim lies solely before the Industrial Commission and not in the superior court.

Plaintiff does not allege Defendants either improperly failed to produce or improperly withheld evidence.

Strict compliance with Rule 9(j)'s pleading requirement rests *solely upon* Plaintiff and his expert witness. *See id.* Admitted, unchallenged, and undisputed evidence in the record supports the trial court's findings and conclusions to dismiss. *Thigpen*, 355 N.C. at 202, 558 S.E.2d at 165. No burden shifting, review in light most favorable, or the existence of genuine issues of material fact relieves Plaintiff of strict compliance with the pleading requirement under Rule 9(j). M*oore*, 366 N.C. at 32, 726 S.E.2d at 817. The appellate court's review of undisputed facts is purely a question of law, not a factual review in the light most favorable to Plaintiff. *Preston*, 374 N.C. at 189, 840 S.E.2d at 184.

## II. Plaintiff's Rule 9(j) Certification

### A. Prior to Filing Claim

The trial court properly dismissed Plaintiff's complaint for failure to comply with Rule 9(j). Dr. McConville admitted he had failed to reference or review Plaintiff's PPD test from 1 July 2009 prior to making his certification.

N.C. Gen. Stat. § 1A-1, Rule 9(j) provides:

> Medical malpractice. Any complaint alleging medical malpractice by a health care provider pursuant to G.S. 90-21.11(2)a. in failing to comply with the applicable standard of care under G.S. 90-21.12 *shall be dismissed* unless:
>
> (1) The pleading specifically asserts that the medical care

> *and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed* by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;
>
> (2) The pleading specifically asserts that the medical care and *all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person* that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint.

N.C. Gen. Stat. § 1A-1, Rule 9(j) (2019) (emphasis supplied).

The plain language of Rule 9(j) mandatorily requires a plaintiff's medical malpractice action "*shall be dismissed*" unless a qualified medical expert reviews "*all medical records pertaining to the alleged negligence* that are available to the plaintiff after reasonable inquiry" prior to filing the complaint. N.C. Gen. Stat. § 1A-1, Rule 9(j) (1)-(2) (emphasis supplied).

"[C]ompliance with Rule 9(j) is determined at the time the complaint is filed." *Mangan v. Hunter*, __ N.C. App. __, __, 835 S.E.2d 878, 883 (2019). This Court held: "Rule 9(j) unambiguously requires a trial court to dismiss a complaint if the complaint's allegations do not facially comply with the rule's heightened pleading requirements." *Barringer v. Wake Forest Univ. Baptist Med. Ctr.*, 197 N.C. App. 238,

255, 677 S.E.2d 465, 477 (2009). This Court further held "even when a complaint facially complies with Rule 9(j) by including a statement pursuant to Rule 9(j), if discovery subsequently establishes that the statement is not supported by the facts, then dismissal is likewise appropriate." *Id.*

Based upon Dr. McConville's review, expert opinion, and certification, Plaintiff's complaint included the following false Rule 9(j) certification:

> Plaintiff states that the medical health providers who Plaintiff reasonably believes will qualify as expert witnesses under Rule 702 of the North Carolina Rules of Evidence reviewed all of the allegations of negligence related to medical care that is described in this Complaint and *all the medical records pertaining to the alleged negligence that are available to Plaintiff after a reasonable inquiry.*

(emphasis supplied).

### B. Deposition Testimonies

The majority's opinion asserts Dr. McConville's belief that Defendants should have included tuberculosis in their differential diagnosis earlier. By accepting this premise and sidestepping Rule 9(j), the majority misapplies a level of medical standard of care to determine a prior and undisclosed three-year-old tuberculosis test may create individual liability for Defendants. This notion is contrary to the required standard of care, our statutes, rules, procedures, precedents, and the facts of this case.

Dr. McConville's opines Dr. Bell was individually guilty of medical malpractice, because Dr. Bell should have suspected a tuberculosis infection sooner and ordered an MRI scan due to Plaintiff's prior positive, but undisclosed, 2009 PPD test, more than three years prior to Dr. Bell's initial treatment. Dr. McConville testified Plaintiff's prior history of tuberculosis was "relevant" to forming and the development of the "differential diagnosis."

Equally, or even more important, is Dr. Bell's and Dr. Stover's lack of knowledge of the prior test that Plaintiff had failed to disclose in his medical history. Dr. McConville testified to Plaintiff's positive 2009 PPD test:

> Defendants' Counsel: I want to break that apart just a little bit, but did you review [Plaintiff]'s medical records related to his positive PPD test in 2009?
>
> Dr. McConville: No. I saw the note from the infectious disease doctor when he was hospitalized that he had a past history of tuberculosis so - - and that was in September - - August, Sep- - August, September when he was hospitalized and had his surgery- - initial surgery.
>
> Dr. McConville: So PPD basically you get a - - you know, a shot, you know, typically just subcutaneously in your forearm, and then you come back two days later and see if there's any - - oh, what's the right word—if it's - - if it's red or indurated. And then that - - that diameter is- - is measured. And there's a cutoff that if it's above a certain, you know, diameter, then there is - - assume that, you know, this person's been exposed to tuberculosis.
>
> Defendants' counsel: Do you know the size of [Plaintiff]'s [PPD] result was in 2009?

Dr. McConville: I don't 'cause I don't believe I reviewed those records.

Defendants' counsel: Do you know what treatment he was provided?

Dr. McConville: I do not, no.

During cross examination by Plaintiff's counsel, Dr. McConville testified:

Plaintiff's counsel: And would [night sweats] have been something that would be important for Dr. Bell to put in his request for an MRI that he made in June of 2013 for [Dr.] Martin?

Dr. McConville: I think that *in conjunction with his previous diagnosis of tuberculosis,* yes. It's very pertinent.

. . . .

Plaintiff's counsel: Do you recall seeing any notes from Dr. Bell that referenced that positive tuberculosis test?

Dr. McConville: *Not that I recall, no.*

Plaintiff's counsel: Is that something that's important?

Dr. McConville: Yes

Plaintiff's Counsel: Let me ask that a little more clearly. Is that *something that would be important for Dr. Bell to know?*

Dr. McConville: Yes. I think that would definitely have guided him in his decision-making process in regards to, A, his differential and, B, what test that he might have ordered for [Plaintiff], not only radiographic [X-ray] tests but also bloodwork.

Plaintiff's counsel: So in order to know about that prior

tuberculosis test, Dr. Bell would have had to review [Plaintiff]'s previous medical records, correct?

Dr. McConville: I assume, yes.

(emphasis supplied).

During re-direct, Dr. McConville further testified:

Defendants' counsel: Okay. What would Dr. Bell have needed to know about for the purposes of his providing medical care to [Plaintiff] and abiding by the standard of care in this case - - what would Dr. Bell have needed to know about the prior positive PPD test?

Dr. McConville: A, if he was treated. And B, it might have been prudent to get, you know, chest CT to make sure that he had no had - - developed active tuberculosis again, But also like, you know, with this case, you know, the end result- - you know, you assume with the complaints of night sweats or cold chills or what have you, weight loss and low back pain - - you know, you want to rule out, you know, an infection in the spine from tuberculosis.

## C. Motion to Dismiss

Plaintiff' sought his medical records from DAC beginning from the time period two and one-half years after his July 2009 PPD positive diagnosis for tuberculosis. As a result, Dr. McConville failed to review the results of this test and any treatment before rendering his Rule 9(j) certification. Nothing in the record shows Plaintiff ever informed or provided either of the Defendants with this PPD test, any treatment thereof, or with any disclosure of his prior tuberculosis to hold them individually liable.

Dr. McConville testified to the importance of this test to Defendants' alleged breach of their standard of care by failing to diagnose Plaintiff's tuberculosis infection earlier. It is undisputed Dr. McConville did not review the results of the 2009 PPD test and bases and certifies his opinion of Defendants' alleged breach of the required standard of care upon their failures to know the undisclosed. When questioned by Defendants 'counsel at deposition, Dr. McConville could not ascertain if the 2009 test was the result of latent or active tuberculosis bacteria.

The majority's opinion asserts "Defendants have not demonstrated why the one-page skin test form or other documents produced in 2018 would have made any meaningful difference in the expert review of the medical care." This assertion is erroneous in two different ways. First, it places a burden upon Defendants that is contrary to *Preston,* all precedents, and our statutes. Plaintiff, not Defendants, maintains the burden of compliance with Rule 9(j) prior to filing the complaint. *Preston*, 374 N.C. at 189, 840 S.E.2d at 183. Second, given the nature of tuberculosis and the specific culture found after Plaintiff's surgery, Defendants' purported knowledge of Plaintiff's undisclosed 2009 positive history of tuberculosis is critical to support Dr. McConville's Rule 9(j) certification.

Dr. McConville's testified Plaintiff's prior diagnosis of tuberculosis and any treatment thereafter is pertinent to the standard of care and allegations of negligence against Dr. Bell and Dr. Stover. Dr. McConville opined Plaintiff's history of

tuberculosis, in conjunction with his other symptoms, should have made Dr. Bell suspicious of a potential tuberculosis infectious process in diagnosing and treating Plaintiff.

Plaintiff's original complaint filed in Columbus County, which contained Dr. McConville's Rule 9(j) certification, alleged the source of Plaintiff's infection was from tuberculosis. Plaintiff's later complaint, filed in Cumberland County, with a similar certification, only mentions UNC Hospital's tuberculosis cultures post-surgery, and not the 2009 PPD test. Plaintiff's appellate brief alleges tuberculosis as the source of his infection.

This Court in *Mangan* recently examined a similar issue of the statute's mandate requiring the expert's review of "all medical records" to comply with Rule 9(j). *Mangan*, __ N.C. App. at __, 835 S.E.2d at 883. In *Mangan*, and unlike here, the parties disputed whether the Rule 9(j) expert had reviewed all medical evidence. *Id.* Here, Plaintiff concedes in depositions, before the trial court, in briefs, and at oral argument that Dr. McConville did not review Plaintiff's 2009 PPD test or treatment to indicate tuberculosis.

These facts before us mirror those in *Fairfield v. WakeMed*, where a Rule 9(j) medical expert certified he had reviewed "certain" plaintiff's medical records. *Fairfield v. WakeMed*, 261 N.C. App. 569, 574, 821 S.E.2d 277, 280 (2018). This Court affirmed the trial court's dismissal.

"North Carolina courts have strictly enforced the provisions of Rule 9(j)." *Id.* at 574, 821 S.E.2d at 281. More illustratively, this Court held:

> Based on the unambiguous language of the Rule, all of the relevant medical records reasonably available to a plaintiff in a medical malpractice action must be reviewed by the plaintiff's anticipated expert witness prior to the filing of the lawsuit, and a certification of compliance with this requirement must be explicitly set out in the complaint.

*Id.*

To not strictly follow this rule and allow an expert to "selectively review a mere portion of the relevant medical records would run afoul of the General Assembly's clearly expressed mandate that the records be reviewed in their totality." *Id.*

Dismissing Plaintiffs argument to the contrary, this Court continued:

> Rule 9(j) simply does not permit a case-by-case approach that is dependent on the discretion of the plaintiff's attorney or her proposed expert witness as to which of the available records falling within the ambit of the Rule are most relevant. Instead, Rule 9(j) requires a certification that "all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry" have been reviewed before suit was filed.

*Id.* at 574-75, 81 S.E.2d at 281.

Rule 9(j) compels the Plaintiff to provide to their expert and requires the expert to review "*all medical records pertaining to the alleged negligence* that are available to the plaintiff after reasonable inquiry" before the filing of the complaint. N.C. Gen. Stat. § 1A-1, Rule 9(j) (emphasis supplied).

Dr. McConville expressly admitted he had failed to review the results of Plaintiff's 2009 PPD test showing his tuberculosis infection before making the certification in the complaint, which is the basis of his alleged breach of the standard of care against Dr. Bell and Dr. Stover. During discovery, Defendants learned Dr. McConville had not reviewed all of Plaintiff's relevant medical records, prior to 1 January 2012, the same type of breach of the standard of care for which he opines Defendants are liable.

This Court's holdings in *Fairfield* and *Barringer* controls the analysis and proper outcome of Dr. McConville's failure to review. *Fairfield*, 261 N.C. App. at 574, 821 S.E.2d at 280; *Barringer*, 197 N.C. App. at 255, 677 S.E.2d at 477. "[E]ven when a complaint facially complies with Rule 9(j) by including a statement pursuant to Rule 9(j), if discovery subsequently establishes that the statement is not supported by the facts, then dismissal is likewise appropriate." *Barringer*, 197 N.C. App. at 265, 677 S.E.2d at 477. The trial court's order of dismissal complies precisely with both precedents.

### D. Reasonableness of Plaintiff's Record Inquiry

The majority's opinion asserts Plaintiff's made a reasonable inquiry for records after "January 1, 2012." Rule 9(j) requires records "available to the plaintiff after reasonable inquiry" before the filing of the complaint. N.C. Gen. Stat. § 1A-1, Rule 9(j). Plaintiff's brief and arguments do not show his specific and dated request for

records for his Rule 9(j) expert witness to review and certify Defendant's alleged negligence was reasonable to excuse and give credence to Dr. McConville's certification

Considering Plaintiff's own knowledge of his recent 2009 PPD test and tuberculosis diagnosis, Plaintiff could have requested medical records for an expanded term from the DAC, at least for the period of his incarceration. At the time Plaintiff sought treatment for his back pain, he was or should have been aware of his recent past tuberculosis infection. Plaintiff's counsel failed to request all the records available "after reasonable inquiry" relating to the infection prior to obtaining Rule 9(j) certification and filing his complaint. No allegation or evidence tends to show Plaintiff disclosed or informed Dr. Bell or Dr. Stover of his past PPD test or provided any medical history of tuberculosis infection. It was Plaintiff's duty to disclose.

Dr. McConville opined Defendants breached their standard of care and committed medical malpractice by treating a patient with a history of tuberculosis and without more immediately ordering an MRI study to rule out that infection. Dr. McConville further testified Defendants individually breached their standard of care and committed medical malpractice by not seeking out Plaintiff's medical records when Plaintiff presented his symptoms: numbness in his legs, blood in his stool, night sweats, unexplained weight loss, fatigue, and severe pain.

Dr. McConville testified he did not review nor seek out these same records, but yet he condemns Defendants of breach of the required standard of care and medical malpractice for their alleged same failures. Dr. McConville's basis of Plaintiff's prior history of tuberculosis was disclosed in chart notes from a UNC Hospital infectious disease physician after Plaintiff's surgery and treatment. No information was disclosed to Defendants while they were treating Plaintiff. Dr. McConville's opinion from this record was vital to his assertion and certification of Defendants' alleged breach of the standard of care to support the Rule 9(j) certification in Plaintiff's complaint.

Plaintiff stipulated at oral argument that Defendants and their employers did not withhold any evidence of the PPD test to later ambush Plaintiff or Dr. McConville during the deposition, or that Plaintiff's incarceration limited his knowledge or access to his records or the treatments he received. Plaintiff does not assert the 2009 PPD tuberculosis test was disclosed or known to nor held by Defendants individually.

Additionally, the specific dates in Plaintiff's medical record's request failed to encompass the time frame of his 2009 PPD test of tuberculosis infection. This PPD test was relatively recent to Plaintiff's 2012 complaints of back pain and was not so remote in time to Defendants' treatment to excuse Plaintiff's disclosure thereof or being provided for review. This recentness in time is unlike a diagnosis of a chronic disease at childhood or tests and treatments from many years earlier.

Plaintiff' admittedly failed to comply with the statute or to inform Defendants or Dr. McConville of his past medical history and records at the time of their treatment of Plaintiff and the Rule 9(j) review. His argument is properly overruled, and the trial court's order affirmed.

### III. Conclusion

Rule 9(j) affirmatively and mandatorily requires the qualified medical expert to review "all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry" and certify breach of the statutory standard of care prior to the filing of the complaint. N.C. Gen. Stat. § 1A-1, Rule 9(j).

The majority's opinion (1) fails to properly apply the statute; (2) misconstrues our precedents to recast undisputed and conceded facts as ambiguities; (3) shifts from Plaintiff and places an improper burden on Defendants; and, (4) misinterprets Plaintiff's expert's own testimony and failures to erroneously reverse the trial court's order.

The trial court's order reflects the correct ruling under the law and precedents and is properly affirmed. I respectfully dissent.